## CITY OF NAVASOTA v. BEN. W. PEARCE.

1. DAMAGES—STREETS—MUNICIPAL CORPORATIONS.—No action for damage can be maintained against a municipal corporation, such as a town or city, to which the "exclusive control and power over its streets, alleys, and public grounds and highways" is given by its charter, by a party who has suffered an injury occasioned through want of repair of its streets.

2. It is universally admitted that an individual action, unless authorized by statute, cannot be maintained against counties, parishes, or commissioners of highways, for damages sustained through their neglect to keep their bridges and highways in repair, although the duty of doing so is clearly enjoined upon them by law, and they have authority to collect taxes, and make adequate assessments to that end. The establishing and maintaining a highway is a matter of State duty, and whether its discharge is intrusted to the county, street commissioners, or a municipal corporation, by its charter, is immaterial; the right to recover damage for injury sustained by the neglect of duty by either, in keeping a highway in repair, does not exist.

3. But where the privileges given in a charter, are granted either upon an express or implied condition of corporate responsibility to individuals who suffer damage through the neglect of their performance of duty, or when the charter confers some franchise or privilege, from which profit may be made, apart from its govermental powers, and which might have been granted to a private corporation or an individual, an action may be maintained for damage sustained from

a breach of such condition, or through the negligent or improper exercise of the rights conferred by such franchise.

4. SAME.—Plaintiff sued for damages, for the loss of his horse and injury to his buggy, occasioned by the negligence of the city of Navasota in keeping its streets in repair. The horse fell in harness, rolled into a ditch, was killed in the affair, and the buggy broken : *Held*, That no action lay against the city.

5. SAME.—There is no such liability by statute, and the decision is based upon the rule at common law.

APPEAL from Grimes.   Tried below before the Hon. J. R. Burnett.

January 27, 1873, B. W. Pearce sued the city of Navasota for damage, alleging the failure of the authorities of the city to keep the streets, &c., in safe condition for traveling, and that, from such negligence, injury had been occasioned to plaintiff; in that, on October 29, 1872, while driving his horse and buggy in one of the public streets of said city, his horse slipped and fell, and, while scrambling, rolled into a ditch, receiving a wound from the shaft of his buggy, then broken, from which the horse died; that the buggy was greatly injured.   Judgment was asked for the value of the horse and the damage to the buggy.

The defendant demurred, and plead a general denial, and that the accident and consequent injury to plaintiff, was occasioned by his own neglect, and want of skill in managing his horse, &c.

The jury returned a verdict for plaintiff for two hundred dollars damages.   A motion for new trial was overruled, and the city appealed.   The errors assigned, and the additional facts necessary, are given in the opinion.

*J. R. Kennard*, for appellant, cited Detroit *v.* Blakely, 21 Mich., 84; Bartlett *v.* Crozier, 17 Johns., 438; 2 Hill on Torts, 493, 502, 503, 507; Morey *v.* Newfane, 8 Barb., 645; Hewiston *v.* City of New Haven, 37 Conn., 475; Sykes *v.* Town of Paulet, 43 Vt., 446.

*Boone & Goodrich*, for appellee.

MOORE, ASSOCIATE JUSTICE.—We are called upon in this case, for the first time, to determine, whether an action for damages can be maintained against a municipal corporation, such as a town and city, to which the "exclusive control and power over its streets, alleys, public grounds, and highways" is given, by charter, to a party who has suffered an injury occasioned through want of repair of its streets.

Numerous decisions from the courts of other States may be cited in which such actions have been incidentally or directly approved. A careful examination, it is believed, will show that the precise question which is here presented has been decided in by no means so many of them, however, as would be supposed, on a casual examination, leaving out of the account the decisions of those States where such actions are given by statute. But still it cannot be questioned that such actions have been often maintained, aside from statutory authority in their support, in courts of the highest authority, and by jurists of pre-eminent learning and ability; and we should be forced to admit that the great, if not overwhelming weight of authority, was unquestionably with the affirmative of the proposition, if the decisions in its favor were in harmony with each other. But they are in irreconcilable conflict, in respect to the grounds on which it is held the action arises and is to be maintained, where any effort is made to develop the principle of law upon which the right of action is founded, if it has any solid support beyond the general current of decisions in the courts of the New England States in its favor, and it is there held that such actions are not maintained by the common law. (Mower *v.* Inhabitants of Leicester, 9 Mass., 247; Barney *v.* City of Lowell, 98 Mass., 570; Mitchell *v.* City of Rockland, 52 Maine, 118.)

It is believed to be now admitted everywhere that an individual action, unless authorized by statute, cannot be maintained against counties, parishes, or commissioners of highways, and such *quasi* corporations, for damages sustained through their neglect to keep their bridges and highways in

repair, although the duty of doing so is clearly enjoined upon them by law, and they have authority to collect taxes or make adequate assessments to this end. (Bartlett *v.* Crozier, 17 Johns., 439; Freeholders of Sussex *v.* Strader, 3 Harr., 108; Weet *v.* Brockport, 16 N. Y., 161, note.) We confess it does not surprise us, that it has been found somewhat difficult with those who acknowledge the correctness of these decisions, and yet maintain, when a like duty has been imposed upon a village, town, or city by its charter, that damages may be recovered of these corporations by an individual who has sustained an injury from neglect of the like duty, to agree upon the ground on which the action is to be maintained.

But let us consider the grounds upon which those who insist upon such corporate liability have sought to maintain it. The earliest cases to which reference is generally made in discussing the subject, are those of Bailey *v.* Mayor, &c., 3 Hill, 531, and Mayor *v.* Furze, 3 Hill, 612, though neither of them present the precise question which is before us. In the first of these cases the court draws a distinction between powers conferred upon municipal or public bodies, exclusively for public purposes, and those where they have a private interest or estate for private advantage or emolument. No action, it is admitted, can be maintained against the corporation for an omission or breach of duty in respect to the former, while in respect to the latter the corporation stands on the same footing as an individual having like special franchises. The principle here announced seems to be in strict accord with the doctrine in the case of The Mayor *v.* Turner, 86 Cow., and Henly *v.* The Mayor, &c., 5 Bing., 91. And if municipal corporations are invested by law with franchises and privileges from which they derive private advantages and emoluments, as is well known is often the case in England, we have no question, if an individual suffers injury from a breach of duty by the corporation in respect to these special franchises, that he is entitled to his action. It seems, however, impossible for us to say that incorporated towns and cities derive any pri-

vate advantage or emolument from the power to control and repair their streets and alleys.

In the case of Mayor *v.* Furze, an altogether different principle is announced. Park, Justice, in the case of Lyme Regis, when before the House of Lords, 1 Bing., 222, in speaking of corporations and individuals who hold franchises on conditions, says: "It is clear and undoubted law, that whenever an indictment will lie for non-repair, an action on the case will lie, at the suit of a party sustaining any peculiar damage." But so broad an application of this language of Mr. Justice Park, unquestionably, cannot be sustained, as was shown in subsequent cases in the same court, in which it is in effect repudiated. (Wilson *v.* The Mayor, &c., 1 Denio, 601; see also Weet *v.* Brockport, 16 N. Y., 162.) If the principle announced in The Mayor *v.* Furze is correct, unquestionably an action might also be maintained against counties and parishes, though such an action, as is admitted in the case of Russell *v.* The Men of Devon, 2 Term, 673, had never been even brought prior to that time.

In the case of Weet *v.* Brockport, the court, after an elaborate and careful review of the previous decisions, and thorough discussion of the question, held, upon the authority of Lord Mansfield, in the case of Whitfield *v.* Lord Le Despencer, Cowp., 754, that "a public officer who receives no compensation from, and owes no duty to any private individual, is accountable to the public alone for his neglect." An analogous doctrine, it is also said, may be found asserted in Brooke's Abr., title, "ACTION IN THE CASE," upon the authority of the Year Books, that if a highway be out of repair, so that a horse be mired and injured, "no action lies by the owner against him who ought to repair it, for it is a public matter, and ought to be reformed by presentment." The court, in discussing the point, also quotes, with approval, the following observations of Judge Huger, in the case of Young *v.* Commissioner of Roads, 2 Nott & McCord, 537, who says: "When an officer has been appointed to act, not for the pub-

lic in general, but for individuals in particular, and from each individual receives an equivalent for the services rendered him, he may be responsible in a private action for a neglect of duty; but where the officer acts for the public in general, the appropriate remedy for his neglect of duty is a public prosecution." He also quotes, with marked approval from the dissenting opinion of Judge Sandford, in the case of Hutson v. The City of New York, 5 Sandf., 289, stating, however, that so far as this point is concerned, all his associates concurred with him, as follows: "It seems to us, the true distinction is that we have mentioned. When the duty is to individuals specially, for a reward, originating from them, a civil action may be brought for neglect, whether of themselves or of their subordinates; but when it is a duty to the public generally, undertaken alike for all citizens, the remedy is by indictment only, together with removal from office, where prescribed by law." It seems clear, both from reason and authority, that the ground upon which such actions are held to lie, in the case of The Mayor v. Furze, is untenable, and they are maintainable alone on the principle at the basis of the cases of Lyme Regis and the Mayor of Linn, and the series of English cases upon the authority of which they were decided, viz., that where, for a consideration from the sovereign, a corporation or individual has become bound, either by expressed or implied covenant or agreement, to do certain things, such corporation or individual is liable, in case of neglect to perform such undertaking, not only to a public prosecution by indictment, but to a private action at the suit of any person injured by such neglect.

From this conclusion, it is evident, that the action could not be maintained, unless it can be shown that the corporation held and enjoyed some franchises, right, or privilege, in consideration of having undertaken the duty of keeping its streets in repair. And such, it maintains, is the fact, as shown by the following considerations: The surrender by the Government, to a municipal corporation, of a portion of its

sovereign power, if accepted, may, as such charters never are imposed upon them, except at their urgent request, with propriety, be considered, says the court, as affording ample consideration for an implied undertaking, on the part of the corporation, to perform, with fidelity, the duties which ·its charter imposes.

It cannot be controverted, and has probably never been denied, where the privileges given in the charter are granted either upon an express or implied condition of corporate responsibility to individuals, who suffer damage through the neglect of their performance of duty; or, when the charter confers some franchise or privilege, from which profits may be made, apart from its governmental powers, and which might have been granted to a private corporation, or an individual, just as well as to the municipality, an individual action may be maintained for damage, sustained from a breach of such condition, or through the negligent or improper exercise of the rights conferred by such franchise. This is merely a reiteration of the true principle, which, as the court had shown, was decided by the cases previously discussed.

It is, as is well known, by no means uncommon, in England, for municipal corporations, like towns and cities, or even *quasi* corporations, such as counties and parishes, to hold and exercise, by prescription and immemorial usage, or by special grant from the Crown, franchises and privileges, as private property, the grant of which, on the principle stated above, furnishes sufficient consideration to support actions, against such corporations, by individuals, injured by their neglect or omission to properly perform duties expressly or impliedly incumbent upon them by reason of the franchises or privileges thus exercised and enjoyed. But we cannot see that such cases furnish an analogy, which warrants its being held that a like liability attaches to municipal corporations, created, as is generally, if not universally, the case, with us, through motives of public policy, to which merely governmental powers are intrusted, in view of the general public welfare, as well as

the better government of the districts which they embrace, but with no purpose of conferring private benefits upon the individuals composing them.

The ground upon which it is insisted, in the opinion in the case of Weet v. Brockport, and adopted in the subsequent case of Hickok v. Plattsburgh, 16 N. Y., 191, (note) as a correct exposition of the principles governing in actions of this character, is, that while such corporations may be governmental measures in theory, they are in fact privileges of great value, and because the franchises they confer are sought for with much earnestness, and are never imposed, it is said, upon municipal bodies, except at their request, and it is upon this ground the actions have been subsequently maintained in that State, and in the courts following its lead.

But, with due deference to the learned court from which this doctrine emanates, we are constrained to say, that it seems to us to be altogether fallacious. It had been previously demonstrated, in the opinion of the court, that such actions cannot be maintained against counties, parishes, or commissioners of highways, although like governmental powers are delegated to them by the State, within their respective jurisdictions, and notwithstanding the discharge of these duties are absolutely enjoined upon them, and although they are authorized to collect taxes, or make assessments, adequate to their proper discharge. Unquestionably, the powers intrusted to cities and towns, by their charters, are, in general, more important and far more varied than those usually delegated to counties and parishes; but, if they are limited merely to the delegation of governmental powers, they can be exercised only, so long as it is the pleasure of the State to permit it. The grant, and acceptance of such charters, do not have effect as contracts between the State and corporation.

From the great difficulty, if not absolute impossibility, for the enactment, by the Legislature, of all necessary legislative and police regulations for the efficient and proper govern-

ment of towns and cities, in respect to the interest of citizens of the State at large, as well as of those residing within their limits, it has become a fundamental principle in our theory of government, to intrust probably the largest portion of the powers of the Government, to be exercised within their limits, to local control, under town and city charters. The necessity for this is no doubt felt more fully, as well as more speedily, by the inhabitants of a given locality than by other citizens; therefore, as a general thing, such charters are not granted, "except at their request." Still, we cannot perceive how the fact that the Legislature was moved, on the petition of a portion, or even the entire population of the particular locality, to grant a charter, enabling them to exercise such portion of the sovereign power of the State as it deemed fit to intrust to it, should change the legal effect of the charter, or the rights and liabilities of the corporation. But if towns and cities are liable to actions of this kind, because such corporations are not usually created by the legislature, except on the urgent request of their inhabitants, the same is equally true, generally, with us, in respect to counties. On principle, therefore, they should be held to a like liability. This, however, as has been said, is now universally denied.

So far as we have observed, there seems to have been no effort, on the part of the advocates of the rule of liability, to maintain the doctrine of contract, from which it is deduced by the courts of New York, in their latter decisions, but rather to sustain it, on the ground of public policy and its general recognition in previous decisions. (Barnes v. District of Columbia, 1 Otto, 540; Judge Cooley's dissenting opinion, in Detroit v. Blakely, 27 Mich., 84.) And Judge Dillon, while insisting that it has been quite uniformly held, that incorporated towns and cities, having control of their streets, are liable to private parties for injuries caused by defective streets, though conceding that there is no corresponding liability on the part of counties, and other *quasi* corporations charged with similar duties in regard to highways and bridges, admits

that "the ground for the distinction which gives an action, if the injury happens within the limits of a municipality having control of the streets therein, and denies it, if it happens within the limits of a township or county having equal control over the highways, and adequate means of discharging its public duties in respect thereto, is not as satisfactory to the mind as could be desired." (2 Municip. Corp., 905.) Again, he says: "And especially have the courts been much perplexed respecting the principle upon which to rest the distinction. (Id., 875.)

The source, however, from which he seems to deduce the liability, is by a division of the corporate powers of these municipalities into two classes; the first including, as he terms them, private or corporate duties, and the second, such as are of a public character, in which they act as State agencies; and that, as regards acts of the first class, they are liable to like responsibility as attaches to individual or private corporations aggregate.

It would extend this opinion beyond reasonable length to discuss the distinction here suggested. It must suffice to say, if it exists in regard to any of the powers conferred upon such corporations, it cannot, as we think, be maintained that the powers conferred upon them, with reference to their streets, fall within the first class. Certainly the establishing and maintaining of highways is a matter of State duty; and whether the discharge of this duty is entrusted to the county, street commissioners, or a municipal corporation by its charter, seems to us immaterial, and can in no way alter or change its character.

Not being able to perceive that the grounds upon which these actions have been upheld in the decisions in their favor, and not believing we are authorized to give sanction to them on the presumption of supposed public policy, we are constrained, notwithstanding the great weight of authority in their favor, to hold that they are unauthorized.

Whenever public or private interest demands that such

municipal corporations shall be held responsible to injured parties, this privilege will be given by the Legislature. Until this is done, we are content to leave the matter as, in our opinion, it has stood under the common law, from time immemorial.

In differing, as we do, from the learned and distinguished courts, and eminent jurists by whom actions of this kind have been sanctioned and upheld, we are glad to know that we do not stand alone. (Detroit *v.* Blackely, 21 Mich., 84, and the cases there cited.)

In conclusion, we will add, that this opinion has no reference to any other character of case than the precise one before us; and we do not undertake to determine whether there may, or may not, be other cases in which an individual action may be maintained for wrongs done or damages sustained through wrongful act, or from the omission or neglect of municipal duty by corporations.

It appearing from the appellee's petition, that the acts of which he complains afford him no ground of action against appellant, the judgment is reversed and the cause dismissed.

REVERSED AND DISMISSED.