HENRY KELLER v. THE CITY OF CORPUS CHRISTI.

1. POLICE REGULATIONS—CONSTITUTIONAL LAW.—Section 17 of the bill of rights in the Constitution of 1876, prescribing that "No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person, and when taken, except for the use of the State, such compensation shall be first made or secured by a deposit of money," does not apply to police regulations necessary to meet an impending danger.

2. LIABILITY OF CITY OFFICIALS.—Where a city officer carries out an ordinance for the public benefit, no damage can be recovered against the city on account of his negligence or careless performance of the duty.

3. PUBLIC USE.—A public use is one which concerns the whole community in which it exists, as contradistinguished from a particular individual or a number of individuals.

4. PROPERTY IN CITY MAY BE DESTROYED TO PREVENT SPREAD OF FIRE WITHOUT LIABILITY.—The destruction of property by a hook and ladder company (part of the fire department of a city) for the purpose of preventing the spread of a fire, is not an act for which a suit for damages would lie at common law against the city.

5. SPECIAL REMEDY AGAINST A CITY MUST BE PURSUED.—When a charter (Acts of 1875, sec. 117, p. 145) authorizes the destruction of property to prevent spread of fire, &c., and provides a remedy by commissioners to be appointed to adjust the claims against the city, such claims can only be asserted in the mode defined in the statute.

APPEAL from Nueces.   Tried below before the Hon. John C. Russell.

The facts are given in the opinion.

*Mc Campbell & Givens,* for appellee.—We believe that no action against a municipal corporation for damages occasioned by the acts or omissions of its agents or officers can be main-

tained in this State. The Legislature has not made any provision for such remedy, and it did not exist at common law.

In the case of the City of Navasota *v.* Pearce, 46 Tex., 525, the court says: "No action for damages can be maintained against a municipal corporation, such as a town or city, to which the exclusive control and power over its streets and alleys and public grounds and highways is given by its charter, by a party who has suffered an injury occasioned through want of repairs of its streets." "It is universally admitted that an individual action, unless authorized by statute, cannot be maintained against counties, parishes, or commissioners of highways for damages sustained through their neglect to keep their bridges and highways in repair, although the duty of doing so is clearly enjoined upon them by law, and they have authority to collect taxes and make assessments to that end."

The city of Corpus Christi was organized under the general law regulating the incorporation of cities of one thousand inhabitants or over. (Laws of 1875, p. 113.) Section 117 of this law provides:

"When any building in the city is on fire, it shall be lawful for the chief or acting chief engineer, with the concurrence of the mayor, to direct such building, or any other buildings, to be torn down, blown up, or destroyed, and no action shall be maintained against any person or against the city therefor; but any person interested in any such building so destroyed or injured may, within six months, and not thereafter, apply in writing to the city council to assess and pay the damage he sustained; and if the city council and the claimant cannot agree on the terms of adjustment, then the application of such claimant shall be referred to three commissioners— one to be appointed by the claimant, one by the city council, and the third by both."

The statute goes on to prescribe how the commission shall proceed.

The petition of plaintiff alleges "that section 117 of the charter of said city, by virtue of which the pretended author-

ity whereby the said city claims the right to tear down, blow up, or destroy buildings the private property of its citizens, is in flagrant violation of the Constitution of the State of Texas and of the Constitution of the United States, and is null and void; that the action of said city in the demolition and destruction of the said property of petitioner in pursuance of said pretended authority, through its agents as aforesaid, was willful, malicious, oppressive, and destructive of the rights of petitioner, and in violation of the essential principles of free government, against the peace and dignity of the State of Texas and of the United States of America."

This sounds very like an indictment against the Legislature and the city for their attempt to protect the property of the community against destruction thereof by fire.

We would respectfully submit, that if section 117 be such a gross violation of the Constitution as the plaintiff alleges it to be, his remedy, if any he has, must be prosecuted against the individuals who committed the alleged injury to the property, and not against the city.

We contend, however, that this section of the law is not only constitutional, but that it is a wise provision. It is the law of self-protection, and. it exists even without the sanction of the statute.

Judge Cooley, in his admirable work on Constitutional Limitations, says: "There are cases where it becomes necessary for the public authorities to interfere with the control by individuals of their property, and even to destroy it where the owners themselves have fully observed all their duties to their fellows and to the State, but where, nevertheless, some controlling public necessity demands the interference or destruction. A strong instance of this description is where it becomes necessary to take, use, or destroy the private property of individuals to prevent the spreading of a fire, the ravages of a pestilence, the advance of a hostile army, or any other great public calamity. Here the individual is in no degree in fault, but his interest must yield to that necessity which ' knows no

law.'" (Cooley's Const. Lim., p. 593, and authorities there cited.)

"The rights of private property, sacred as the law regards them, are yet subordinate to the higher demands of the public welfare. *Salus populi suprema est lex.* Upon this principle, in cases of imminent and urgent public necessity, any individual or municipal officer may raze or demolish houses and other combustible structures in a city to prevent the spreading of an existing conflagration. This he may do independently of statute, and without responsibility to the owner for the damages he thereby sustains. The ground of this exemption from liability is the public necessity, the public good, and therefore if the public good did not require the act to be done—if the act was not apparently and reasonably necessary—the actors cannot justify, and would be responsible." (Dill. on Mun. Corp., sec. 756.)

"Municipal corporations, or certain officers thereof, are sometimes appointed, by charter or statute, agents to judge of the emergency and direct the performance of acts which any individual might do at his peril without any statute at all; and by statute or charter such corporations are not unfrequently made liable for damages which individuals may sustain for buildings or property which are destroyed under the direction of the proper officers to prevent the extension of a fire. The liability of the municipal corporation in such cases is purely statutory, and hence, in order to charge it, the case must be fairly and clearly within the enactment." (Dill. on Mun. Corp., sec. 757.)

"In order to charge the town, the remedy being given by statute only, the case must be clearly within the statute. Independent of the statute, the pulling down of a building in a city or a compact town is justified upon the great doctrine of public safety, when it is necessary."

In Mouse's case, 12 Co., 63, Lord Coke, as an illustration of a general proposition, that what the immediate safety of the public requires is justifiable, says: "For saving of a city

or town, a house shall be plucked down if the next be on fire." This every man may do without being liable to an action.

It is one of those cases to which, says Mr. Justice Buller, the maxim of *salus populi suprema est lex* applies. (4 T. R., 797.) But if there be no necessity, then the individuals who do the act shall be responsible.

This is the more reasonable, as the law has vested an authority in the proper officers to judge of that necessity. But the town is responsible by force of the statute only, and such responsibility is limited to the cases specially contemplated. (Taylor *v.* Inhabitants of Plymouth, 8 Metc., (Mass.,) 465.)

It is true, the plaintiff's petition alleges "that his said property was not on fire, nor was the same in imminent danger of taking fire." Under our statute it was not necessary for the officers to wait until the building was on fire, or even to be in imminent danger. If the officers deemed the building hazardous, or likely to take fire and communicate to other buildings, they were authorized to tear down the house or buildings.

The plaintiff's petition states that the property was demolished and destroyed, but an inspection of the petition shows that the property was only partially destroyed. We may say that it was not very materially damaged; in fact, the plaintiff fails to allege that the part of the property which was destroyed was of any value whatever. If there were no other defect in the petition, this would be sufficient to sustain the demurrer.

Possibly the plaintiff might have been entitled to a writ of mandamus to compel the city to appoint a commissioner to act with others in assessing the damages sustained by plaintiff. But we know of no law which would authorize the plaintiff to bring this suit.

We find a South Carolina case very similar to this: "The city council of Charleston, acting under the general municipal powers of the city, and without any special statute creat-

ing a liability, adopted an ordinance authorizing the intend-
ant, among other officers, in time of fire, to demolish such
buildings 'as may be judged necessary' by him to prevent
the further spread of fire, thereby investing this officer with
the power to judge whether the necessity existed. A fire
being in progress, the plaintiff's house was blown up by order
of the intendant, and the fire was subsequently extinguished
before it reached his house, and he brought his action of tres-
pass against the city, claiming that the property had been de-
stroyed by the intendant without necessity, and that the ordi-
nance authorizing the intendant to destroy the property for
the benefit of the city was sufficient to charge the city corpo-
ration, in case the plaintiff established that the destruction
was unnecessary and that the discretion of the officer had
been abused."·

The court decided that the plaintiff could not recover,
placing its judgment upon the broad ground that the city,
being a public corporation, was not liable to an action un-
less it was given by statute. (White *v.* Charleston, 2 Hill,
(S. C.,) 574.)

Dillon, in noticing this case, says: "The result was right;
but, assuming the power to pass the ordinance, the decision
should be placed, we think, upon the ground that the intend-
ant was discharging a public duty, as distinguished from a
municipal or corporate duty, and is not in this matter to be
regarded as the agent of the city, and therefore the city
would not, on the principle of *respondeat superior*, be respon·
sible for his acts." (Dill. on Mun. Corp., 867, note; Fisher
*v.* Boston, 104 Mass., 87; Hafford *v.* New Bedford, 16 Gray,
297; Wheeler *v.* Cincinnati, 19 Ohio St., 19.)

The plaintiff relied upon the position that the chief engi-
neer, or acting chief engineer, and the mayor were the agents
of the city. Is this position correct? We think not. The
power and discretion given to these officers to tear down
buildings in time of fire was not conferred by the city coun-
cil, but by the act of the Legislature.

Thus, in New York, the mayor and aldermen, in making an order for the destruction of a building pursuant to the statute, ( 2 R. L., 1831, sec. 81, p. 368,) were considered to act not as the officers or agents of the company, but as magistrates or public officers, designated by their official names by the Legislature for the execution of a public duty. (Dill. on Mun. Corp., sec. 885, note; Russell *v.* Mayor of New York, 2 Denio, 461, 473, 481.)

The members of the fire department, although appointed by the city corporation, are not the agents and servants of the city, for whose conduct it is liable, but they act rather as the officers of the city charged with a public service, for whose negligence in the discharge of a public duty no action lies against the city without being expressly given. (Dill. on Mun. Corp., sec. 774; Hafford *v.* New Bedford, 16 Gray, 297.)

We contend that Keller could not have recovered against the city by reason of any wrongful act of the officers or members of the fire department, or of the city government, in tearing down a building during a time of fire, it matters not what may have been the pleading or the proof.

The liability did not exist at common law, and it has not been created by statute.

*F. E. McManus,* for appellant.—Our Constitution and laws give a right of action to every person whose freehold has been invaded to his damage, as was that of the plaintiff, and because the District Court erroneously denied this, in sustaining the demurrer and in dismissing the case, its judgment should be reversed.

However excellent as a rule of political action the common-law doctrine, *salus populi suprema est lex,* may be, it has never been incorporated in our statutes as a law of property in this State. On the contrary, the thirteenth subdivision of the declaration of rights in the Constitution of the Republic of Texas, that "No person's particular services shall be demand-

ed, nor property taken or applied to public use, unless by the consent of himself or his representative, without just compensation being made therefor according to law," has formed a provision of the fundamental law of the State in each succeeding Constitution up to the present time.

It was incorporated in the Constitution of 1845 as section 14 of article 1, and repeated in that of 1869 as section 14 of the bill of rights. Under this latter Constitution the general act of incorporation of March 15, 1875, was adopted, and constitutes, as alleged in plaintiff's petition, the charter of the corporation of Corpus Christi. The same provision, amplified so as to include prohibitions that " no person's property shall be taken, damaged, or destroyed, and when taken, except for the use of the State, such compensation shall be first made or secured by a deposit of money," forms a part of the seventeenth section of the bill of rights in the Constitution of 1876.

While the welfare of the people is recognized as the chief end of government, the policy of this State, as thus manifested, has been to promote that welfare by the promulgation and enforcement of guarantees for the better securing the freehold of individuals not only from invasion or interference on the part of municipal or other corporations, but from a too facile exercise of the right of eminent domain by the State itself.

The charter of the city having provided for compensation to the owners of buildings torn down, blown up, or destroyed, and prescribed a mode of ascertaining the amount of damages sustained by them, the grant of authority to destroy the property of plaintiff was, at the time of its enactment, constitutional. (B. B. B. and C. R. R. Co. v. Ferris, 26 Tex., 588.; H. T. and B. R. R. Co. v. Milburn, 34 Tex., 224.)

The Constitution of 1876 having repealed this authority by providing that compensation shall be first made or secured by a deposit of money, the assumed authority of the District Court for sustaining the demurrer and dismissing the suit

must be found, if anywhere, in the principles and precedents of the common law. In sustaining the demurrer, the court proceeded upon the assumption that while the destruction of the plaintiff's property by the firemen, acting in concurrence with the mayor, was unlawful, and rendered the parties to it individually liable, it was not the act of the corporation, and gave the plaintiff no cause of action against the city.

We are thus confronted with the cardinal question: Was the destruction of the property complained of the act of the corporation, involving the corporate liability of the city to the plaintiff for the damages sustained? The decision of the case is embraced in an answer to this question. The rule of the common law on this subject, as recognized by this court in the case of Peck *v.* City of Austin, 22 Tex., 261, is that municipal corporations possess a double character,—the one, governmental, legislative, or public; the other, proprietary or private, — and that for the acts of their agents in their public capacity no action lies unless it be given by statute; while for other acts done in their private capacity there is an implied or common-law liability. (1 Dill. on Mun. Corp., sec. 39, note 2, quoting Oliver *v.* Worcester, 102 Mass., 489; 2 Dill. on Mun. Corp., secs. 761, 778, 779.)

A fire department and a mayor, &c., are provided for by the charter as necessary instrumentalities in carrying into effect the local purposes to be achieved by the corporation. Are the acts of these agents, done in the *bona-fide* discharge of the duties thus imposed on them, corporate or individual acts? This is declared to be a question of construction, and the construction given it by Judge Selden is: "That where powers pertaining to the duties of a corporation are conferred upon those who officially represent the corporation, these powers, unless the contrary appear, are deemed to be conferred upon them in their corporate, not their individual, character; in other words, upon the corporation itself." (1 Dill. on Mun. Corp., sec. 63, note 1, quoting Conrad *v.* Ithaca, 16 N. Y., 158; 2 Dill. on Mun. Corp., sec. 772.)

The duty of judging of the necessity of destroying houses the private property of citizens, and carrying its judgments into execution, was, under certain conditions, granted to the corporation, to be exercised solely for the benefit of residents within the corporate limits. If that duty may, under the arbitrary classifications of the common law, be properly called a public as distinguished from a corporate duty, its publicity can only have reference to the corporators under the charter. It involves no pecuniary interest of the people of the State at large, nor of any section or city of the State, except the one for whose benefit it is exercised. The action of the authorities of Corpus Christi, upon a matter so entirely local or personal to itself, involves no legal or pecuniary interest of the people of northern, eastern, or western Texas, nor of the cities of Marshall, Galveston, or San Antonio, nor even of the adjoining city of Rockport.

The extinguishment of fires by organized fire companies is not at all a State or governmental duty. It is a purely conventional expedient among parties interested, and who are usually found to be residents within the limits of municipal corporations. But as it is an expedient promotive of the welfare of the people of towns and cities, the State favors it, while regulating its action. The State grants it certain privileges and powers upon certain conditions and within certain limitations and restrictions. It does not and cannot give to municipal corporations, as the controllers and directors of this organized force, a power which the State itself does not possess, — the power to deprive a person of his freehold for the general good of his neighbors, without his consent or without compensation.

The control of the fire department being given to the corporation for the good of the people included within its limits, the exercise of that control by the mayor, in conjunction with the chief engineer of the fire department, in the special emergency provided for in the charter, is strictly a corporate act. This is illustrated by the Supreme Court of the United States,

in an examination of the nature of municipal corporations and the relations they sustain to the State, with reference to a loan of municipal credit to a railroad, as follows:

" Was it exercised for the benefit of the municipality?— that is, in the course of its municipal business or duties? In other words, was it acting in its capacity of an agent of the State, delegated to exercise certain powers for the benefit of the municipality? * * * This was a question for the decision of the city under the authority of the State. It was a question to be decided solely with reference to public and municipal interests. It was not for the individual benefit of those managing the business. No one received advantage, except as he was a citizen, or his property was within the city." (United States v. Baltimore and Ohio Railroad Co., 17 Wall., 330, 331.)

Under the common law, municipal corporations are held liable for the tortious acts of their officers and agents, even in the absence of a statute giving the action, if it appears that the acts complained of were done *bona fide* in the discharge of corporate duties constitutionally conferred. (2 Add. on Torts, ch. 25, sec. 1, p. 1301; 2 Dill., secs. 763, 764.)

Any further consideration of the common-law doctrines on the subject is unnecessary, because in this case the action is secured by the Constitution and provided for in the general act of incorporation constituting the charter of the defendant. That the acts complained of were done by the officers designated and authorized by the charter to perform that precise duty, and that the plaintiff thereby suffered damage in his property, as alleged in his petition, are admitted by the demurrer. The law of this State applicable to these facts is plain. The language of Chief Justice Moore, in B. B. B., &c., v. Ferris, is sufficiently clear and emphatic to dispel any doubts that might be engendered by a hasty reference to the works of text writers, commenting upon the application of other and different laws to a dissimilar condition of facts. He says: "The State is as impotent as an individual to take

private property for any purpose without the owner's consent, unless adequate compensation is made for it. Unless this provision of the Constitution has been complied with, any interference with private property, it matters not under what pretense, is an injury done to the owner, for which he is entitled to redress 'by due course of law.' The Constitution gives a right of action to every one who has received an injury in his lands, goods, &c.; and it cannot be said that an individual's land can be taken from him, let it be done by whom or for what purpose it may, without injury, except where adequate compensation has been made to him for so doing." (26 Tex., 602.)

Again, in the case of the City of Navasota *v.* Pearce, 46 Tex., 525, the same judge enforces the same principle, as follows:

"It cannot be controverted, and has probably never been denied, where the privileges given in the charter are granted either upon an express or implied condition of corporate responsibility to individuals who suffer damage through the neglect of their performance of duty, * * * an individual action may be maintained for damage sustained from a breach of such condition, or through the negligent or improper exercise of the rights conferred by such franchise."

In view of the law on the subject, and the denial by the District Court to the plaintiff of his day in court, it is submitted that the judgment of the District Court ought to be reversed and the cause remanded.

BONNER, ASSOCIATE JUSTICE. — The plaintiff brought suit against the city of Corpus Christi for $1,500 damages, being the alleged value of a dwelling-house and appurtenances owned by him in that city and destroyed by a hook and ladder company, constituting a portion of its fire department, on the 8th of October, 1877, for the purpose of preventing the spread of a fire. The property was thus destroyed without the consent of the owner, and without compensation

being made to him, either before or after its destruction. It is alleged in plaintiff's petition that the hook and ladder company were engaged in the course of their regular employment as agents of the city, under the direction of the acting chief engineer of the fire department, and with the concurrence of the mayor, when they entered and destroyed his dwelling-house and appurtenances.

Defendant demurred, denying any cause of action on the part of plaintiff. The court sustained the demurrer, and the plaintiff declining to amend, the cause was dismissed. Plaintiff gave notice of appeal and assigns as error—

1. The District Court erred in sustaining the defendant's demurrer.

2. The District Court erred in dismissing this suit.

The city of Corpus Christi was organized under the general law regulating the incorporation of cities of one thousand inhabitants or over. (Laws of 1875, pp. 144, 145.)

Section 116 provides that the city council shall have power to organize fire, hook and ladder, hose and axe companies, fire brigade, &c.; and that they, with such assistant engineers as may be provided for, and the chief engineer shall constitute the fire department of the city; that the engineers shall be chosen in such manner as the department may determine, subject to the approval of the city council, who shall define the duties of said officers; that all of said officers so elected and approved shall be commissioned by the mayor and be governed by the ordinances of said city relating to the fire department, and that their powers and duties shall be prescribed and defined by the city council.

Section 117 provides that when any building in the city is on fire it shall be lawful for the chief or acting chief engineer, with the concurrence of the mayor, to direct such building, or any other buildings which they may deem hazardous and likely to take fire and communicate to other buildings, to be torn down or blown up and destroyed; and that no action shall be maintained against any person or against the

city therefor; but any person interested in any such building so destroyed or injured, may, within six months, and not thereafter, apply in writing to the city council to assess and pay the damage he has sustained, and if the city council and the claimant cannot agree on the terms of adjustment, then the application of such claimant shall be referred to three commissioners, who shall be qualified voters and owners of real estate in the city, one to be appointed by the claimant, one by the city council, and the third by both. They shall be sworn faithfully to execute their duty according to the best of their ability; shall have power to subpœna and swear witnesses, and shall give all parties a fair and impartial hearing, and give notice of time and place of meeting; they shall be qualified voters and owners of real estate in the city; shall take into account the probabilities whether the building would have been destroyed by fire if it had not been so pulled down or destroyed; and may report that no damage should equitably be allowed to said claimant. Whenever a report shall be made and finally confirmed for the appraising said damages, a compliance with the terms thereof by the city council shall be deemed a full satisfaction of said damages.

The judgment in this case is sought to be reversed under section 17 of the bill of rights in the Constitution of 1876, which reads as follows: "No person's property shall be taken, damaged, or destroyed, or applied to public use, without adequate compensation being made, unless by the consent of such person; and when taken, except for the use of the State, such compensation shall be first made or secured by a deposit of money."

This provision as to the deposit of money in advance, was evidently intended more particularly to provide speedy adequate compensation for property taken in the exercise of the sovereign right of eminent domain, rendered more frequent by the rapidly-increasing demand for railroads and other works of public improvement.

There is, however, a distinction between the exercise of

the right of eminent domain, and that of a police regulation to meet an impending peril, by the destruction of an adjacent building to prevent the spread of fire. The one can await the forms and tardiness of the law; the other is governed by a necessity which knows no law. Delay in the latter case may be certain destruction.

To await the appointment of commissioners, the appraisement of the property, and the payment of the money, is, in cases of eminent domain, doubtless a wholesome regulation, but which, in a case like the one now before court, would be wholly impracticable and could not have been intended by the provision under consideration. (Cooley on Const. Lim., 3d. ed., 572, 526, and note 3, and authorities cited; 1 Dill. on Mun. Corp., sec. 93; 2 Id., sec. 756.) It is said by Clarendon that such unwise delay on the part of the lord mayor of London caused half that city to be burned in the great conflagration of 1665.

In the elaborate case of Russell *v.* The Mayor of New York, 2 Denio, 461, it is held, that the authority conferred by statute upon the mayor to order such destruction of buildings is not a grant of the right of eminent domain, and is not, therefore, within the constitutional guaranty of compensation.

The plaintiff further contends that the action complained of was not the exercise of such a public power as would at common law exempt the corporation from liability, but was one of strictly corporate powers, for which the city should make compensation.

In the case of Peck *v.* The City of Austin, 22 Tex., 263, in discussing the question of the powers of a municipal government, it is said: "The exertion of its powers by its constituted authorities in prescribing rules of police, * * * * is but a mode of exerting the power of the government of the State within the limits of the city. It is a government within a government. Still they are the same; the one being the execution of the will of the other, within certain established boundaries of power and in a certain locality."

The same principle of a dual government is applied to that of our Federal Union in the case of the United States v. Cruikshank, 2 Otto, 542.

In the leading case of Hafford v. City of New Bedford, 16 Gray, 302, in which the plaintiff claimed damages for injuries by the hose carriage belonging to the fire department, under the management of the city authorities, from negligence of the fire company, it was held, that "where a municipal corporation elects or appoints an officer in obedience to an act of the Legislature to perform a public service in which the city or town has no particular interest, and from which it derives no special benefit or advantage in its corporate capacity, but which it is bound to see performed in pursuance of a duty imposed by law for the general welfare of the inhabitants of the community, such officer cannot be regarded as a servant or agent, for whose negligence or want of skill in the performance of his duties a town or city can be held liable." To the same effect is the subsequent case of Fisher v. Boston, 104 Mass., 87.

This principle is recognized by this court in the City of Navasota v. Pearce, 46 Tex., 525.

A "public use" is one which concerns the whole community in which it exists, as contradistinguished from a particular individual or numbers of individuals. (Gilmer v. Lime Point, 18 Cal., 251.)

We are of opinion that the destruction of the property complained of was for a public use, and not such private corporate use as would authorize a suit at common law. (Fisher v. Boston, 104 Mass., 93.)

To what extent, then, was the defendant, as a municipal corporation, liable?

At common law, in cases of this sort, no such liability attached. (2 Dill. on Mun. Corp., secs. 756, 757.) Lord Coke says: "For the commonwealth a man should suffer damage, as for the saving of a city or town a house shall be plucked down if the next be on fire. This every man may

do without being liable to an action." (Mouse's Case, 12 Coke, 13, 63.)

To meet this hardship to the owner, the statute of incorporation under consideration was passed, providing compensation for the destruction of the property, under certain safeguards. Certain named agents, with discretionary powers judicial in their nature, were constituted judges of the emergency, and it was not left to the hasty action of perhaps inconsiderate individual parties.

An effective and speedy remedy was given to adjust and make compensation for the loss. This is all that the law requires. (Cooley's Const. Lim., 559; Railroad Co. *v.* Ferris, 26 Tex., 588.)

Such suit being a permissive one, authorized by statute against a *quasi*-sovereignty, the statutory remedy alone can be pursued. (2 Dill. on Mun. Corp., 759; Cooley's Const. Lim., 561.)

The plaintiff's right of action, if any he had, should have been pursued under the statute; and for the alleged failure of the defendants to appoint a commissioner, he should have applied for a mandamus.

The plaintiff neither by the common law nor the terms of the statute being authorized to maintain this suit, the judgment below is affirmed.

AFFIRMED.