## HOUSTON CITY R'Y CO. v. J. J. DAWSON.

(March 23, 1880.)

STREET RAILWAY — DAMAGES.— Where a city grants to a corporation the right to use its streets for street railways, and provides in the grant of such franchise that the crossings of streets over those upon which the railway is constructed shall be kept in good order, the company is liable for an injury sustained by a person falling through a defective culvert at such crossings, and is the proper party to be sued. This liability attaches to such company, although under its charter the city may not be liable for injuries resulting from defective streets.

APPEAL from Harris county. Opinion by WALKER, J.

STATEMENT.— March 18, 1875, Dawson sued the Houston City Street Railway Company for damages for injuries received by plaintiff from falling into a hole left in a culvert in the line of the railway, at the crossing of Milam street with Commerce street, in the city of Houston, January 2, 1875; the defect in the culvert being from the neglect of the defendant, whose duty as common carrier, and using the highway, and under its obligations imposed by city ordinances, it was to keep in good repair. Appropriate averments as to the incorporation, designation of streets, construction and using the railway by the defendant; injury, damages for loss of time, expenses for board, nurse, medical bill, etc., were alleged, etc.

The company demurred generally, and specially excepted on the ground that, if any cause of action existed, it was against the city of Houston, and not against the said company.

The court sustained the demurrer in so far as the petition set up a general liability, but held the petition good in so far as it set up a failure in said company to comply with the above provision in the city ordinance, and overruled the special exceptions. There was a verdict and judgment for Dawson for special damages in the sum of $440.

The charter of the appellant, offered in evidence, pro-

vides, in section 3, "That the company is authorized to build such roads on any street within the corporate limits of the city of Houston as may be hereafter agreed upon by the mayor and aldermen of the city of Houston and the said Houston City Railway Company, with the right to use such motive power as may be agreed upon between the company and the city council;" and in section 8 of said charter it is provided "That all contracts made and entered into by and between the mayor and aldermen of said city and the said company, or any privileges or rights granted by the said mayor and aldermen of the city of Houston to the said company, shall be, in all respects, binding on the aforesaid contracting parties." And it is further provided in section 10 of said charter "that nothing contained in said charter shall annul or set aside any ordinance or laws of the city council of the city of Houston."

The plaintiff read also, in evidence, from the city ordinances enacted by the proper authorities of the city of Houston, June 24, 1871, an ordinance entitled "An ordinance granting the right of way and other privileges on certain streets of the city of Houston to the Houston City Street Railway Company."

1. "That the exclusive right of way is hereby granted to the Houston City Street Railway Company, organized under a charter passed by the legislature of the state of Texas on the 6th day of August, 1870, and of which company J. H. Scanlan is president and J. W. McDonald is secretary, with the privilege of laying down, using and maintaining and operating a single or double track railway, and necessary side tracks, turn-outs, turn-tables, etc., for the purposes and uses for which this grant is made, through and over any of the streets, and bridges situated upon the same, in the city of Houston, herein designated, to wit, Commerce street," etc.

2. "The said Houston City Street Railway Company shall be required to use said grant in such manner as not to unnecessarily impede travel on the streets named, and

construct their road or roads upon grades established, or to be established, by the officers of the city of Houston, and shall, at all times, keep and maintain, in good order, all crossings at the intersection of other streets named, over which their street railway may be constructed."

The testimony showed that a culvert across Commerce street, at the intersection of Milam street with it, was out of repair between the rails of the railway operated by the defendant company, the defect being a broken plank, leaving a hole one foot wide, two or three feet in length, and one and a half feet in depth; that the defect remained for several days, and on Saturday morning, January 2, 1875, about 2 o'clock, plaintiff stepped into said hole and fell, falling upon one of the rails, dislocating his shoulder and bruising one hip, from which injury plaintiff was disabled from his labor at his trade of printer for over two months; was put to expense in board bills, medical attention, nursing, etc. The testimony was, to some extent, conflicting as to the length of time the defect had remained. Two witnesses testified to its having remained several days prior to the injury.

The court instructed the jury:

1. . . . "If satisfied that defendant company undertook to maintain and keep in repair the crossings over the streets run over by its cars, and if it failed and neglected to do so, and plaintiff, without fault or negligence on his part, was injured by falling into a defective culvert on a street crossing, over which defendant's track was laid, then find for plaintiff such damages as the proof shows he has sustained, such as," etc.

2. Was as to contributory negligence.

3. "If the proof shows that the crossing was kept in repair, but that suddenly a plank was broken, and defendant, in the exercise of due care and attention, could not have discovered the same, then it may be considered a case of inevitable accident, for which defendant cannot be held

liable; on the other hand, if defendant could have discovered the defect by the use of due and proper care, then it does not fall under the head of inevitable accident."

Defendant filed a motion for new trial: 1. Because the court erred in overruling the exceptions to the petition. 2. Error in the charge; and 3. Verdict is contrary to law and the evidence.

The motion was overruled, and on appeal errors are assigned: 1 and 2. Error in not sustaining the demurrer and exceptions to the petition. 3. Court erred, in the first section and in the last paragraph of the third section of the charge to the jury, in overruling motion for new trial.

The questions discussed in argument, as raised by the assignment of error, and insisted upon, are:

1. There is no privity between Dawson and the said company; Dawson's remedy, if any he had, was against the city of Houston, and not against the company.

3. The petition does not show a cause of action against the city of Houston, and if said company is liable at all it is by virtue of the above-recited provision in the city ordinance; the company stands in the place of the city, is entitled to the same defenses the city has, and can only be held liable where the city of Houston would be liable.

The petition, in addition to a careful statement of the facts relied on, and which are given in the statement of testimony above, further alleged "that said injury was caused by the gross negligence and carelessness of defendant in failing to keep said crossing in repair; . . . that said defendant was not only bound by the agreement and ordinance to keep said street crossings in repair, but it was and is bound, as a matter of common right and duty, as a common carrier, using and enjoying, as a franchise, the streets of the city of Houston, and its failure to keep said street crossing in good repair is, and was, gross negligence, without regard to its said agreement and the said ordinance, and that thereby plaintiff was damaged as aforesaid."

Opinion.— Since the preparation of the briefs by the counsel in this case, the principles controverted by appellant have been discussed, and, in part, recognized. It would seem, however, that to the extent the demurrer was sustained below it was well taken. The duty to keep the section of the streets in repair grew out of the city ordinance conferring privileges and imposing duties upon the exercise of the franchise granted.

In the case of the City of Navasota v. Pierce, 46 Tex., 530, Moore, J., the general rule is recognized "that where, for a consideration from the sovereign, a corporation or individual has become bound, either by expressed or implied covenant or agreement, to do certain things, such corporation or individual is liable, in case of neglect to perform such undertaking, not only to a public prosecution by indictment at common law, but to a private action at the suit of any person injured by such neglect."

This rule, under the conditions indicated, would affect, with the duty and consequent liability for neglect of it, a town or city. Id., 531. "It cannot be controverted, and has probably never been denied, . . . when the charter (of a town or city) confers some franchise or privilege from which profits may be made, apart from its governmental powers, and which might have been granted to a private corporation or to an individual, as well as to the municipality, an individual action may be maintained for damage sustained from a breach of such condition, or through the negligent or improper exercise of the rights conferred by such franchise." Id., 537.

Under the authority of the case cited, if the charter of the city of Houston, as we suppose it is, in the absence of proof, is "limited merely to the delegation of governmental powers to the corporation, the city would not, under the pleadings, be liable, had it been sued by plaintiff for the injuries for which he has sued the appellant." But does this immunity extend to the street railway company, or does the city ordinance protect the appellant from liability?

The city authorities, as contemplated by the charter granted to the "Houston City Street Railway Company," had the power to impose, by ordinance, upon the appellant the duty that it "shall, at all times, keep and maintain, in good order, all crossings at the intersection of other streets with the streets named, over which the street railway may be constructed." The ordinance so authorized had "the force, as to persons bound thereby, of laws passed by the legislature of the state." 1 Dillon on Municipal Corporations, sec. 246, and authorities cited.

The railway company being directly affected by the ordinance, it was, by law, required to keep the street crossings in good order. The city, by its ordinance, added to its contract with the street railway company the sanction of legislation with its consequences. The neglect to observe this ordinance was a violation of law, and the violation in the case made by the plaintiff was the cause of the injury; or, at least, the injury was occasioned by the defect in the crossing as alleged. The city imposed upon the appellant, in connection with privileges granted, a duty which it did not itself owe, other than from its proper exercise of the governmental functions committed to it by the state in granting its charter. To the violation of a duty so arising, the principle as given in the extract above from the opinion in City of Navasota v. Pierce, attaches responsibility. That the city is not liable does not prevent its passing the ordinance with conditions which include, as construed by the courts, liability for non-compliance with the ordinance, or neglect of duty to the public, involved in the undertaking. Directly, and with the force of legislative authority, the city imposed duties and liabilities upon the appellant beyond those resting upon the city. The action arises not from a breach of the contract with the city, but from a violation of law, and damage caused to plaintiff by the unlawful neglect.

We hold, therefore: 1. That the charter and city ordinance, under which the appellant operated, imposed the

duty upon it, upon granting it valuable franchises; and that the appellant was bound thereby as to its conduct and duties in operating its railway. 2. That the ordinance, which was a law to appellant, required it "at *all times* to keep and maintain in good order all crossings," etc., in which was included the crossing of Commerce street by Milam street, in the city of Houston; and that instead of protecting from liability, the city ordinance imposed a duty and consequent liability upon the appellant. 3. That from the breach from neglect to keep such crossings in good order, an action would lie in favor of any one injured thereby. And that there may be no remedy against the city is not a defense by the appellant to the action brought against it for the same injury, and for which it was liable.

It follows that the petition, so far as sustained, was good, it having alleged facts showing such conditions, breach of duty and damages.

*Second.* The first section of the instruction, and which is assigned as error, embraced the substantial allegations in the petition as a ground of recovery. Having reached the conclusion that the petition was good, the charge embodying it was also proper.

*Third.* The last paragraph of third section objected to is, in its proper construction, as follows: "If the proof shows that the crossing was kept in repair, but that suddenly a plank was broken, and defendant, in the exercise of due care and attention, could not have discovered the same, then it may be considered a case of inevitable accident, for which defendant cannot be held liable; on the other hand, if the defendant could have discovered the defect by the use of due and proper care, then it does not fall under the head of inevitable accidents."

In the discussion by counsel this charge and the petition are both criticised for not containing, as a fact or allegation, *notice* of the defect by the defendant. Had a charge been asked, the court may have given additional instructions as to notice, due and proper care, its absence, etc.

The petition does more than allege *notice* in alleging that "there was left by the defendant, and unknown at the time to the plaintiff, a hole or opening," etc.; "the failure to keep the crossing in repair," was gross negligence, etc. The testimony showed that the defect was at a public crossing, and tended to show that it had existed for several days before the injury.

The testimony sufficiently sustained the finding upon the want of due and proper care; and such care not having been used, would be equivalent to notice in fixing blame upon the defendant. The testimony supported a finding of negligence and its consequent liability. 2 Dillon on Municipal Corporations, secs. 785, 790, and notes.

Finding no error in the record, the judgment below should be affirmed.