**Jim BOWLES, Sheriff of Dallas County, Texas, and Dallas County, Appellants,**

**v.**

**James Ronald CLIPP, et al., Appellees.**

**No. 05–94–01832–CV.**

Court of Appeals of Texas, Dallas.

Feb. 22, 1996.

Thomas F. Keever, Assistant District Attorney, Dallas, for Appellants.

Arch McColl, III, S. Michael McColloch, McColl & McColloch, Dallas, Luther H. Soules, Robinson C. Ramsey, Soules & Wallace, San Antonio, W. James Kronzer, Houston, for Appellees.

Before MORRIS, WHITTINGTON and JAMES, JJ.

## OPINION

MORRIS, Justice.

In this case we address the legal consequences of Dallas County collecting bail bond approval fees for a number of years before the Texas Supreme Court declared such fees to be unauthorized. We address the extent of liability of Dallas County as well as the liability of the Dallas County Sheriff, Jim Bowles, who collected the fees for Dallas County. We also address whether a statutory penalty may be imposed on Sheriff Bowles for being the officer who collected the fees. Incidental to these determinations, we address the statute of limitations to be applied in this case.

As appellants, Sheriff Jim Bowles and Dallas County appeal a district court judgment signed in favor of a certified class of persons who had paid bail bond approval fees. Appellees James Ronald Clipp, Stephen Scott Baker, Ruben DeLeon, and Thomas DeLeon, who each had paid fees, represent the certified class. We refer to appellees collectively as the "Class."

In nine points of error asserted in a single brief, Sheriff Bowles and Dallas County contend the trial court erred in: (1) finding the County liable for a refund of bail bond approval fees; (2) finding Bowles liable for a refund of bail bond approval fees; (3) assessing a penalty as damages against Bowles under article 3909 of the Texas Revised Civil Statutes; (4) awarding prejudgment and postjudgment interest on the additional damages; (5) finding that the collection of bail bond approval fees violated the Texas Constitution; (6) failing to apply a two-year statute of limitations; (7) applying retroactively the Texas Supreme Court's decision in *Camacho v. Samaniego*, 831 S.W.2d 804 (Tex.1992); (8) finding the Class's claims were not barred by laches; and (9) finding Bowles and the County should not recover on their setoff claims.

We conclude the County and Bowles are liable for a refund of the bail bond approval fees. But we also conclude Bowles is not liable for the penalty the trial court imposed on him. Moreover, we conclude the trial court erred in applying a four-year statute of limitations because, in this case, a two-year limitation period must be applied. Accordingly, for the reasons stated below, we affirm the trial court's judgment in part and reverse it in part.

## FACTUAL BACKGROUND

The facts are undisputed because the parties submitted to the trial court a written stipulation of facts to be binding at trial. The stipulated facts are extensive and detailed. We summarize the parties' stipulations to the extent necessary to discuss the points of error asserted.

From December 1, 1981 to June 17, 1992, every person who wanted a bail bond in Dallas County for either a felony or misde-

meanor charge was required to pay to the Dallas County Sheriff a fee for each bail bond filed. The amount of the fee increased during this time period, but always related to services performed by the Sheriff with respect to the reviewing, approving and processing of bail bonds. The bail bond approval fees collected by Sheriff Bowles were never used for his personal gain or benefit but were deposited into the general fund of Dallas County. The parties stipulated specifically that the "business of executing bail bonds is a business effecting [sic] the public interest."

The Dallas County Commissioners Court, through various orders issued from time to time, authorized the Sheriff to collect the fees. The first order was effective December 1, 1981. At that time, former Texas Revised Civil Statutes article 3926a (recodified in 1987 as section 118.131 of the Texas Local Government Code) provided that "the commissioners court of each county may set reasonable fees to be charged for services by the offices of sheriffs and constables." The Commissioners Court relied on this language to set the fees. The amount of the fee initially set by the Commissioners Court was based on an analysis prepared by the Dallas County Auditor of the projected costs of the Sheriff's services in taking and approving bail bonds. Before the Commissioners Court changed the fee amount, the auditor prepared a new analysis to determine the level of fees required to recoup the costs to the County of providing the Sheriff's services. The Commissioners Court increased the fee only when the auditor concluded a higher fee was necessary to recoup increased costs. The County and Bowles stopped collecting the fees when the Texas Supreme Court held in *Camacho v. Samaniego* that Texas counties were not authorized to collect preconviction bail bond approval fees under article 3926a or section 118.131 because those statutes authorized the collection of fees only in civil matters.

The Class brought suit on August 27, 1992 to recover damages based on the collection of the fees. The parties stipulated that from August 27, 1988 to the date suit was filed, Bowles collected and the County received $5,415,510 in bail bond approval fees. Of that amount, $3,695,820 was collected from August 27, 1990 to August 27, 1992. The parties did not stipulate to the amount of fees collected for any specific period other than as described.

Following a trial before the court without a jury, the trial court held the collection of fees by the County and Bowles violated Article XI, Section 1 and Article I, Section 17 of the Texas Constitution. The trial court further found that Bowles received unlawful fees in violation of Texas Revised Civil Statutes article 3909. The trial court awarded actual damages jointly and severally against Bowles and the County in the amount of $5,415,510. The trial court also awarded statutory damages under article 3909 against Bowles in the additional amount of $16,246,530. Prejudgment and postjudgment interest were awarded on both amounts.

## DISCUSSION

### Overview

In addressing the issues presented in this appeal, we first discuss the liabilities associated with collecting bail bond approval fees. This discussion includes an analysis of whether the collection of such fees violated the Texas Constitution. We also address the liability of the County and Bowles for the actions giving rise to any constitutional violations.

Following our analysis of the liabilities in this case, we address the extent of damages arising from the collection of bail bond approval fees. The amount of actual damages is dependent upon the correct application of both *Camacho v. Samaniego* and the statute of limitations. We further analyze the propriety of awarding statutory damages under article 3909 of the Texas Revised Civil Statutes as well as prejudgment and postjudgment interest on the statutory damages.

Finally, we address the County's and Bowles's arguments relating to their affirmative defenses. Because the order of the points of error presented by the County and Bowles does not correspond with the structure of our analysis, we address the points of error out of order.

## Liability

In its suit, the Class generally alleged the County and Bowles were not authorized to "charge a fee to persons making bail." Although the Class's pleadings are very general and, in fact, do not allege any specific constitutional violation,[1] the trial court held the County's and Bowles's actions violated Article XI, Section 1 and Article I, Section 17 of the Texas Constitution.[2] In their fifth point of error, the County and Bowles claim the trial court erred in holding that the collection of bail bond approval fees violated these constitutional provisions.

■ We are unable to discern from the record or the parties' briefs any argument about Article XI, Section 1. In their brief, the County and Bowles cryptically say that Article XI, Section 1 imposes no duty on the County and provides no cause of action for the Class. The only other reference to this particular constitutional provision by the County and Bowles is their asserted conclusion that it "clearly does not apply to this action." These claims are unsupported by any argument or citation to any authority. We are not responsible for making argument for the parties. Because the County and Bowles have not briefed the issue, they have failed to present anything for review with respect to their complaint that the trial court erred in holding they violated Article XI, Section 1. Tex.R.App.P. 74(f); *Essex Crane Rental Corp. v. Striland Constr. Co.*, 753 S.W.2d 751, 756 (Tex.App.—Dallas 1988, writ denied).

■ We are able, however, to review the trial court's holding that the County and Bowles violated Article I, Section 17 of the Texas Constitution. Article I, Section 17 states in pertinent part, "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person...." To recover for a

"taking" under this provision, a plaintiff must show that (1) the State [or legal subdivision] intentionally performed certain acts (2) which resulted in a "taking" of the plaintiff's property (3) for public use. *Dalon v. City of DeSoto*, 852 S.W.2d 530, 537–38 (Tex.App.—Dallas 1992, writ denied). The County and Bowles do not challenge whether the collection of bail bond approval fees was a "taking" within the meaning of Article I, Section 17. Instead, they contend only that the fees were not taken for "public use." Accordingly, we do not address whether the collection of fees is the type of governmental "taking" restricted by this constitutional provision, which apparently is the contention of the Class. In the absence of briefing and argument challenging the trial court's implied finding that a "taking" occurred, we address only the issue of whether the "taking" as found by the trial court was applied to a "public use."

■ Texas courts have adopted a liberal view concerning what is a public use. *Dyer v. Texas Elec. Serv. Co.*, 680 S.W.2d 883, 884–85 (Tex.App.—El Paso 1984, writ ref'd n.r.e.). Whether or not a governmental taking is incident to a public use depends upon the character, and not the extent of such use. *Housing Auth. of Dallas v. Higginbotham*, 135 Tex. 158, 166, 143 S.W.2d 79, 84 (1940). The critical factor is the right the public has to such use and not the extent to which the public may exercise the right. *Higginbotham*, 135 Tex. at 166–67, 143 S.W.2d at 84. The number of people who avail themselves of the public benefit is immaterial so long as the benefit is open to all who choose to use it. *Higginbotham*, 135 Tex. at 167, 143 S.W.2d at 84. Merely because "the advantage of the use inures to a particular individual or enterprise, or group thereof, will not deprive it of its public character." *Id.*

■ In this case, the County provided a service through Bowles of reviewing, pro-

---

1. Neither the County nor Bowles specially excepted to the Class's general pleading on the basis it did not give them fair notice of the Class's claims.

2. The parties, apparently relying on their binding stipulations, did not request the trial court to

make findings of fact and conclusions of law. In their stipulations, there is no reference to the Texas Constitution. We have no indication, therefore, of the trial court's rationale for holding the County and Bowles violated these constitutional provisions.

cessing, and approving bail bonds. This service was available to all who chose to use it. The County incurred costs in providing the service. To defray the cost of the service, Bowles collected bail bond approval fees, which was the "taking" the trial court impliedly found. The parties also stipulated that the business of executing bail bonds is a "business effecting [sic] the public interest." Based on these facts, we conclude the "taking" in the form of fees collected for the purpose of providing a service to the public, which affected the public interest, was incident to a public use as contemplated by Article I, Section 17 of the Texas Constitution.

The County and Bowles rely entirely on *Merrill v. Carpenter,* 867 S.W.2d 65 (Tex. App.—Fort Worth 1993, writ denied), to support their argument that the fees were not taken in connection with a public use. In *Merrill,* the Fort Worth Court of Appeals correctly noted that the meaning of the phrase "for or applied to public use" as found in Article I, Section 17 has been narrowed by judicial decisions to mean "damages which arise out of or as an incident to some kind of public works." *Merrill,* 867 S.W.2d at 68 (citing *Steele v. City of Houston,* 603 S.W.2d 786, 790 (Tex.1980)). After citing *Steele* for this proposition, however, the Fort Worth court concluded, without explanation, that bail bond approval fees are not incident to "public works." *Id.* We believe *Merrill* missed the point of *Steele.*

At issue in *Steele* was whether the government had intentionally destroyed the plaintiff's property. The supreme court discussed the distinction between takings caused by governmental negligence and takings caused by intentional acts, including intentional destruction. The court noted that the constitution does not require compensation for every taking but only for those arising "out of or as an incident to some kind of public works." *Steele,* 603 S.W.2d at 790. In support of this proposition, the court cited to numerous cases in which compensation for alleged takings was denied because the property was taken or damaged by the sovereign due to acts of negligence. *Id.* In all the cases cited, the property at issue was not taken or

damaged for the purpose of furthering public works. The rule to be understood from *Steele,* therefore, is that for a taking to fall with the meaning of Article I, Section 17, it must be an intentional act for the benefit of or in furtherance of a public use. In this context, there is no difference between "public works" and "public use."

Here, Bowles intentionally collected the bail bond approval fees to defray the costs to the County of providing bond processing services. Clearly, the fees were taken for the benefit of or to further the public work of bail bond processing. We note again that *Merrill* provides no reasoning why the fees in that case were not taken incident to public works. Even though the County and Bowles urge us to follow *Merrill,* we are not persuaded by it and decline to adopt it as controlling. We overrule the County and Bowles's fifth point of error.

In their first point of error, the County and Bowles contend the trial court erred in finding the County liable for a refund of the bail bond approval fees. The County on its own behalf claims it is protected from liability by both legislative and governmental immunity. We disagree.

█ In support of its claim that it is protected by legislative immunity, the County cites *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), and *Ross v. Gonzales,* 29 S.W.2d 437 (Tex.Civ.App.—San Antonio 1930, writ dism'd w.o.j.). In each of these cases, however, the court found that *legislators* may be protected by legislative immunity. *Consumers Union,* 446 U.S. at 731–32, 100 S.Ct. at 1974; *Lake Country Estates,* 440 U.S. at 405, 99 S.Ct. at 1179; *Ross,* 29 S.W.2d at 438. Nothing in these cases suggests that the absolute immunity of county officials when performing legislative acts extends to the County as a governmental entity. *Cf. Rheuark v. Shaw,* 628 F.2d 297, 304· n. 12 (5th Cir.1980), *cert. denied,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981). We conclude legislative immunity does not insulate the County from liability in this case.

▓▓▓ The County accurately states that it is entitled to governmental immunity unless there is a constitutional or statutory waiver of such immunity. *See Director of the Dep't of Agric. & Env't v. Printing Indus. Ass'n,* 600 S.W.2d 264, 265 (Tex.1980); *see also Adams v. Harris County,* 530 S.W.2d 606, 608 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.), *appeal dismissed,* 429 U.S. 803, 97 S.Ct. 34, 50 L.Ed.2d 63 (1976). Article I, Section 17 of the Texas Constitution, however, provides such a waiver. The provision states that when a taking of property has occurred under the section, "no irrevocable or uncontrollable grant of special privileges or immunities, shall be made...." Because we have concluded the trial court did not err in holding that the County and Bowles violated Article I, Section 17, the County is not entitled to the protections of governmental immunity in this case. *See Steele,* 603 S.W.2d at 791. We overrule the County and Bowles's first point of error.

In their second point of error, the County and Bowles contend the trial court erred in finding Bowles liable for a refund of the bail bond approval fees. They assert immunity protects Bowles. Although Bowles lists several immunities that are potentially applicable to him, he provides argument and authority only to support his contention that he is protected by legislative immunity.[3] At oral argument, counsel for Bowles represented to this Court that the only immunity he is claiming on appeal is legislative immunity. We limit our review, therefore, to the trial court's conclusion that Bowles was not entitled to legislative immunity.

▓▓▓ The concept of legislative immunity is recognized in Texas. *See Mayhew v. Town of Sunnyvale,* 774 S.W.2d 284, 298 (Tex.App.—Dallas 1989, writ denied), *cert. denied,* 498 U.S. 1087, 111 S.Ct. 963, 112 L.Ed.2d 1049 (1991). Though the concept is recognized, the scope of this immunity has not been well developed in Texas jurisprudence. The concept, however, is well developed in federal law. Although federal law is not determinative of the scope of an immunity under Texas state law, an examination of

federal immunity law is instructive. *See City of Lancaster v. Chambers,* 883 S.W.2d 650, 654 (Tex.1994) (federal law examined in analysis of official immunity under state law). Indeed, the "speech and debate clause" of the Texas Constitution is similar to the "speech and debate clause" found in the United States Constitution upon which federal legislative immunity is based. *Compare* TEX. CONST. art. III, § 21 *with* U.S. CONST. art. I, § 6; *see also Tenney v. Brandhove,* 341 U.S. 367, 372–73, 71 S.Ct. 783, 786–87, 95 L.Ed. 1019 (1951).

▓▓▓ Legislators engaged in legitimate legislative activities are immunized from the consequences of litigation and the burden of defending themselves. *Consumers Union,* 446 U.S. at 731–32, 100 S.Ct. at 1974. Individuals who are not legislators, but who are acting in a capacity comparable to that of a legislator, are also entitled to the immunity. *Hughes v. Lipscher,* 852 F.Supp. 293, 298 (D.N.J.1994). Not all actions taken by officials with legislative duties, however, are protected by legislative immunity. *Hughes v. Tarrant County,* 948 F.2d 918, 920 (5th Cir. 1991). Legislative immunity protects only those duties that are functionally legislative. *Id.* Although there is no absolute standard by which to distinguish between legislative and nonlegislative acts, courts have consistently recognized a distinction between the legislative act of establishing a policy, act, or law and the nonlegislative act of enforcing or administering that policy, act, or law. *See Consumers Union,* 446 U.S. at 736, 100 S.Ct. at 1977; *Hughes,* 948 F.2d at 920; *Bartlett v. Cinemark USA, Inc.,* 908 S.W.2d 229, 237 (Tex.App.—Dallas 1995, n.w.h.). We conclude this distinction should be recognized in this case.

As with the constitutional "taking" issue, Bowles again relies entirely on *Merrill v. Carpenter* to support his legislative immunity argument. Therefore, we again review *Merrill.* In *Merrill,* the court held that because the sheriff was required to carry out the orders of the commissioners court, the sheriff shared the commissioners' legislative immu-

---

**3.** In their brief, the County and Bowles initially claimed governmental, official, and quasi-judicial immunity, as well as legislative immunity, protect Bowles.

nity. *Merrill,* 867 S.W.2d at 68. In support of this proposition, the court cited *Merritt v. Harris County,* 775 S.W.2d 17, 23 (Tex. App.—Houston [14th Dist.] 1989, writ denied). *Merritt* addressed the liability of a constable executing a writ of execution. The issue of legislative immunity was not discussed in *Merritt.* In that case, the constable was found to have *judicial* immunity based upon a provision of the Texas Civil Practice and Remedies Code conferring such immunity upon him when executing writs. *See id.;* TEX.CIV.PRAC. & REM.CODE ANN. § 7.003 (Vernon 1986).

█ The reasoning in *Merrill* is flawed. *Merrill* fails to recognize the distinction between establishing a legislative policy and administering it. Here, Bowles obviously did not establish a policy, act, or law. His role in connection with the bail bond approval fees was to administer and enforce the orders of the Commissioners Court. Bowles's actions, therefore, were nonlegislative in nature. Because Bowles's actions were nonlegislative, he is not entitled to absolute legislative immunity from liability for those actions. Once again, we find *Merrill* unpersuasive and decline to follow it. We overrule the County and Bowles's second point of error.

### Damages

As already stated, we have concluded the trial court did not err in holding that the County and Bowles violated the Texas Constitution. We also note that neither the County nor Bowles challenges the trial court's holding that they violated section 118.131 of the Texas Local Government Code, which was the subject of the supreme court's ruling in *Camacho v. Samaniego,* 831 S.W.2d 804 (Tex.1992). But, in their seventh point of error, the County and Bowles contend the trial court erred in applying *Camacho* retroactively rather than prospectively only.

█ If *Camacho* were applied only prospectively, the County's and Bowles's liability for damages would begin from the date of that decision. The County and Bowles acknowledge, however, that unless the supreme court indicates otherwise, we are to give its opinions retroactive effect. *Bowen v. Aetna*

*Casualty & Sur. Co.,* 837 S.W.2d 99, 100 (Tex.1992). The supreme court did not limit *Camacho* to prospective application only. *See Dees v. Bowles,* 907 S.W.2d 626, 628 (Tex.App.—Dallas 1995, n.w.h.). Accordingly, as the County and Bowles concede, we must give *Camacho* retroactive effect. We overrule the County and Bowles's seventh point of error.

In their sixth point of error, the County and Bowles contend the trial court erred in applying the four-year rather than the two-year statute of limitations. Application of the four-year statute of limitations renders the County and Bowles liable for damages accruing from a date four years prior to the filing of suit. They argue that if the bail bond approval fees constitute a "taking" under Article I, Section 17 of the Texas Constitution, then the two-year limitations period for "taking or detaining the personal property of another" applies.

The Class responds that the unauthorized bail bond approval fees were, in actuality, an illegal tax. As such, the Class contends no statute of limitations applies to bar their recovery. Even if we were to accept the Class's argument that no statute of limitations applies to claims for recovery of tax payments, the Class has not raised a cross-point of error complaining that the trial court erred in applying a four-year statute of limitations.

The Class next contends that their claims are most closely analogous to that of a debt or a refund of monies to which the four-year statute of limitations applies. The Class cites *State v. Carnes,* 106 S.W.2d 397 (Tex. Civ.App.—San Antonio 1937, no writ). In *Carnes,* the court applied the residual four-year statute of limitations to a claim against a sheriff by the State to recover certain sums paid to him and certain fees retained by him as deductions. *Id.* at 399. But the only limitations period claimed by the defendants in *Carnes* was the four-year limitations period. The court did not address whether a different limitations period might be applicable. Furthermore, it does not appear the State alleged that its personal property had been taken or detained.

Here, the Class has specifically argued that its personal property was taken for public use under Article I, Section 17 of the Texas Constitution. The trial court impliedly found a taking, which finding is not challenged in this appeal. Section 16.003(a) of the Texas Civil Practice and Remedies Code expressly governs actions for the taking or detention of the personal property of another and imposes a two-year limitations period. TEX.CIV.PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986). We conclude the trial court erred in applying a four-year limitations period. *Cf. Arquette v. Hancock*, 656 S.W.2d 627, 629 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.) (two-year statute of limitations applied to unconstitutional deprivation of property without due process). We hold that in this case the two-year statute of limitations is applicable. We sustain the County and Bowles's sixth point of error.

In their third point of error, the County and Bowles contend the trial court erred in awarding a statutory penalty as damages against Bowles under title 61, article 3909 of the Texas Revised Civil Statutes. During the relevant time period, article 3909 stated as follows:

> If any officer named in this title or in Chapter 118, Local Government Code, shall demand and receive any higher fees than are prescribed to them in this title, or any fees that are not allowed by this title, such officer shall be liable to the party aggrieved for fourfold the fees so unlawfully demanded and received by him.

Act of May 21, 1987, 70th Leg., R.S., ch. 149, § 16, 1987 Tex.Gen.Laws 707, 1300 (repealed 1993). The Class contends this article imposes a penalty for the collection of any fee not specifically authorized under title 61.

For the time period of 1987 to 1993, both title 61 of the Texas Revised Civil Statutes and chapter 118 of the Texas Local Government Code prescribed certain fees that could be charged. *See, e.g.,* TEX.REV.CIV.STAT.ANN. art. 3905 (Vernon 1966); TEX. LOCAL GOV'T CODE ANN. § 118.011 (Vernon 1988).[4] Title 61 also set forth certain services for which no fee was allowed. *See, e.g.,* TEX.REV.CIV.STAT.

ANN. art. 3904 (Vernon 1966) (entitled "No fee allowed"). Because title 61 specifically disallowed certain fees, it appears clear that the phrase "fees that are not allowed by this title" found in article 3909 refers only to fees that were expressly not allowed under title 61.

The Class would have us broaden the meaning of article 3909 to allow the imposition of a penalty for all fees charged that are not specifically authorized under title 61. To do so would allow a plaintiff to collect fourfold damages not only for the collection of unauthorized fees but also for the collection of any fee authorized by law outside title 61. To give article 3909 such an enlarged meaning would violate established rules of construction and lead to an absurd result. *See Wood County v. Cate*, 75 Tex. 219, 220, 12 S.W. 536, 536 (1889) (supreme court refused to enlarge article 2421 (predecessor to article 3909) to apply to fees outside of title). For example, such a construction would subject an officer to fourfold damages for collecting a fee authorized under chapter 118 of the local government code during the years 1987 to 1993.

In *Dallas County v. Sweitzer*, 881 S.W.2d 757 (Tex.App.—Dallas 1994, writ denied), this Court addressed the meaning of section 51.321 of the Texas Government Code. The language of section 51.321 is nearly identical to that of article 3909. The section states:

> If a district clerk charges and receives a higher fee than is authorized under this subchapter or charges and receives a fee that is not authorized under this subchapter, the clerk is liable to the party charged for an amount equal to four times the amount unlawfully charged and received.

TEX. GOV'T CODE ANN. § 51.321 (Vernon 1988). Like title 61, the subchapter containing section 51.321 both prescribes certain fees and prohibits certain fees. *See, e.g.,* TEX. GOV'T CODE ANN. § 51.318 (Vernon Supp. 1995). In *Sweitzer*, the plaintiff sued for fourfold damages based on the collection of certain fees that were authorized by statute but not authorized within the relevant subchapter. We concluded that section 51.321

---

4. In 1987, many of the fees formerly set under title 61 of the Texas Revised Civil Statutes were transferred to chapter 118 of the Texas Local Government Code.

applied only to fees higher than authorized by the subchapter or specifically *unauthorized* by the subchapter. *Sweitzer,* 881 S.W.2d at 764.

■ The Class argues that this case is distinguishable because the bail bond approval fees collected by Bowles were not authorized under any statute. This fact, however, does not affect the construction and meaning of article 3909. The fourfold damages provided by article 3909 apply only to the collection of fees higher than allowed under the title and fees expressly not allowed under the title. There is nothing in title 61 that expressly prohibits the collection of a bail bond approval fee. We sustain, therefore, the County and Bowles's third point of error.

In their fourth point of error, the County and Bowles contend the trial court erred in awarding prejudgment and postjudgment interest on the damages awarded under article 3909. Because we have concluded the trial court erred in awarding damages under 3909, the imposition of prejudgment and post-judgment interest on those damages is also error. We sustain the County and Bowles's fourth point of error.

## Affirmative Defenses

■ Having concluded that the County and Bowles are liable for actual damages caused to the Class, we now address the arguments raised by the County and Bowles regarding certain affirmative defenses raised in opposition to such liability and the extent of damages. In their eighth point of error, the County and Bowles contend the trial court erred in holding the Class's claims were not barred by the doctrine of laches. No authority is cited to support this contention. The failure to cite any authority constitutes a waiver of the alleged error. *Murrco Agency, Inc. v. Ryan,* 800 S.W.2d 600, 607 (Tex.App.—Dallas 1990, no writ). Accordingly, we overrule the County and Bowles's eighth point of error.

In their ninth point of error, the County and Bowles contend the trial court erred in finding they were not entitled to recover on their setoff claims. During oral argument, however, the County and Bowles withdrew this point of error from this Court's consideration. Accordingly, we dismiss the County and Bowles's ninth point of error.

## Conclusion

Based upon the foregoing, we affirm the trial court's judgment in part and reverse it in part. We affirm those portions of the judgment finding a violation of Article XI, Section 1 and Article I, Section 17 of the Texas Constitution and awarding actual damages jointly and severally against the County and Bowles. We reverse that portion of the judgment applying the four-year statute of limitations rather than the two-year statute. Because the parties stipulated to the amount of actual damages accrued during the two-year period prior to filing suit, we render judgment to award actual damages in the amount of $3,695,820. We also reverse the judgment to the extent it awards the statutory penalty as damages under title 61, article 3909 of the Texas Revised Civil Statutes.

In its judgment, the trial court awarded a specific amount of prejudgment interest on the actual damages it found, which it calculated under a four-year statute of limitations. Although the parties stipulated to the aggregate amount of fees collected during the two years before suit was filed, this stipulated figure alone does not allow us to calculate the accrued amount of prejudgment interest on the amount of fees collected. We must, therefore, remand the cause to the trial court for the limited purpose of recalculating prejudgment interest as applicable.