Waltraud H. **STEELE** et al., Petitioner,

v.

**CITY OF HOUSTON**, Respondent.

No. B-8366.

Supreme Court of Texas.

July 16, 1980.

Rehearing Denied Sept. 12, 1980.

---

Michael A. Lamson, Houston, for petitioner.

Robert M. Collie, Jr., City Atty., Frank L. Mauro, John H. Helm and William T. Fiddes, Asst. City Attys., Houston, for respondent.

POPE, Justice.

Waltraud Steele, Jutta Mozingo, and Robert Ingram sued the City of Houston for damages which they say they sustained when officers of the Houston Police Department caused the destruction of their home and belongings while attempting to recapture three escaped convicts who had taken refuge in the house. Mozingo and Ingram were married at the time of the events upon which this action is based. The trial court rendered a summary judgment against the plaintiffs, and the court of civil appeals has affirmed. 577 S.W.2d 373. We reverse the judgments of the courts below and remand the cause for trial.

Plaintiffs alleged their action under the Tort Claims Act, Tex.Rev.Civ.Stat.Ann. art. 6252–19, as a nuisance, and as a destruction of their property for which they are entitled to compensation under Article I, Section 17,[1] of the Texas Constitution. The City of Houston specially excepted to the pleadings, urging that it had governmental immunity to the action and that section 14 of the Tort Claims Act preserved its immunity. Though the trial court did not rule on the City's special exceptions, plaintiffs amended their pleadings and again alleged that the City's actions constituted a taking of their property without due process of law and without compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution and of Article I, Section 17,[1] of the Texas Constitution.

The City then moved for summary judgment on the ground that plaintiffs had not alleged an action either under the Tort Claims Act or under a nuisance theory. The trial court sustained this motion, and the court of civil appeals affirmed. That

court also held that plaintiff had failed to state a nuisance action and that section 14(1) of the Tort Claims Act preserved the City's immunity from liability for an intentional tort.

■ The attack upon plaintiffs' pleadings by means of a motion for summary judgment operated to deny them an opportunity to amend defects in their pleadings. Plaintiffs would have had a right to amend had the trial court sustained City's exceptions to their pleadings. *Harold v. Houston Yacht Club*, 380 S.W.2d 184 (Tex.Civ.App.—Houston 1964, no writ); *Caperton v. Thorpe*, 240 S.W.2d 329 (Tex.Civ.App.—Eastland 1951, no writ); 3 McDonald, Texas Civil Practice § 10.14.4 (1970). Under some situations it has been held error to grant a motion for summary judgment without affording an opportunity to amend. *Andrews v. Austin Motor Truck Co.*, 259 S.W.2d 772 (Tex.Civ.App.—Austin 1953, no writ); 4 McDonald, Texas Civil Practice § 17.26.8 (1971). We do not, however, in reversing the judgments below, place our decision upon the absence of an opportunity to amend because no point is presented which asks us to do so.

It is our opinion that the plaintiffs asserted a cause of action against City of Houston whether the challenge to the pleadings is by exceptions or motion for summary judgment. Plaintiffs, by carrying forward their pleadings into the allegations of their affidavit controverting the motion for summary judgment, stated that their property was destroyed and that they are entitled to adequate compensation under Article I, Section 17 of the Texas Constitution. That section provides:

No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money . . . .

1. The section number actually stated throughout plaintiffs' pleadings was 19. The correct section number was 17.

Plaintiffs Mozingo and Ingram alleged that they were married and living in a house in Houston during October, 1975. They had rented the house from plaintiff, Waltraud H. Steele. Several days before October 10, a group of prisoners escaped from either the Texas Department of Corrections or from some other detention unit. On October 10, Ingram's wife was confined in the hospital, and he was there with her. In their absence, the Houston Police Department discovered that the prisoners had taken refuge in the house. Plaintiffs alleged further that persons in the Police Department discharged incendiary material into the residence in a manner designed to cause and for the purpose of causing the residence to catch fire. They alleged further that after the residence was burning and the Houston Fire Department arrived, the residence was permitted to burn. They stated that the destruction of their house and all of their personal property entitled them to recover under Article I, Section 17, of the Texas Constitution.

The taking, the damaging, or the destruction of property are often treated, more or less, as synonyms, but the terms are different and have different historical origins. The underlying basis for compensating one whose property is taken or damaged or destroyed for public use may, however, be the same, for the prohibition against uncompensated takings "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960); *Y. M. C. A. v. United States*, 395 U.S. 85, 89, 89 S.Ct. 1511, 23 L.Ed.2d 117 (1969). But the terms have a scope of operation that is different.

Property that is taken is transferred from one owner to another. Recent decisions by this court have broadly applied the underlying rationale to takings by refusing to differentiate between an exercise of police power, which excused compensation, and eminent domain, which required compensation. That dichotomy, we have held, has not proved helpful in determining when

private citizens affected by governmental actions must be compensated. *City of Austin v. Teague*, 570 S.W.2d 389 (Tex.1978); *DuPuy v. City of Waco*, 396 S.W.2d 103 (Tex.1965); *San Antonio River Authority v. Lewis*, 363 S.W.2d 444 (Tex.1963); *Brazos River Authority v. City of Graham*, 163 Tex. 167, 354 S.W.2d 99 (1962). In *City of Austin v. Teague, supra* at 394, the court, in the course of holding that municipal action impressing a scenic easement upon one's property entitled the landowner to damages under Article I, Section 17, observed that the City had "singled out plaintiffs to bear all the costs for the community benefit without distributing any cost among the members of the community." In *Teague*, we quoted with approval from *San Antonio River Authority v. Garrett Brothers*, 528 S.W.2d 266, 274 (Tex.Civ.App.—San Antonio 1975, writ ref'd n. r. e.), which spoke of "the doctrine that the cost of community benefits should be distributed impartially among the members of the community." *See also, G., C. & S.F. R'y Co. v. Fuller*, 63 Tex. 467, 470 (1885).

■ Neither the parties nor the courts below have regarded this case as one of eminent domain or inverse condemnation. Neither have we. We cite the cases only to show that this court has moved beyond the earlier notion that the government's duty to pay for taking property rights is excused by labeling the taking as an exercise of police powers.

Uncompensated governmental taking of property was unlawful before Magna Carta. Section 8 of that document restated the rule that goods could not be taken without reasonable compensation. Governmental damaging of property without compensation was more recently proscribed. The Thirteenth Declaration of Rights of the Constitution of the Republic of Texas provided that "No person's particular service shall be demanded, nor property taken or applied to public use, unless by the consent of himself or his representative, without just compensation being made therefor according to law." Hartley, Digest of the

Laws of Texas 42 (1849). The Texas Constitution of 1845 also confined the duty to compensate to the taking of property. Article I, Section 14, provided, "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts shall be made, and no person's property shall be taken or applied to public use, without adequate compensation being made, unless by the consent of such person." Hartley, *supra* at 52. The Constitutions of 1861, 1866 and 1869 had a similar provision. *State v. Hale*, 136 Tex. 29, 146 S.W.2d 731 (1941). The governmental duty to compensate for damaging and destroying a citizen's property first appeared in the Constitution of 1876.

The government's duty to compensate for damaging property for public use after 1876 was not dependent upon the transfer of property rights. We wrote in *G., C. & Santa Fe R.R. Co. v. Eddins*, 60 Tex. 656, 663 (1884):

In our present constitution, the terms used are much broader and more significant, and are as follows: "No person's property shall be taken, *damaged*, or destroyed for or applied to public use, without adequate compensation," etc. Const. of 1876, art. I, sec. 17.

To entitle the party to compensation under our present constitution, it is not necessary that his property shall be destroyed, nor is it necessary that it shall be even taken. It is sufficient to entitle him to compensation that his property has been *damaged*. The fact of being damaged entitles him to the protection extended by this constitutional provision, as fully as if his property had been actually taken or destroyed.

The court in *Eddins* said that, absent a taking, one could recover damages by proof that it was inflicted with special injury such as will "practically deprive him of the ordinary use and enjoyment of it . . . ." The expansion of governmental duty and the distinction between property taken and property damaged were again explained in *G., C. & S.F. R'y Co. v. Fuller*, 63 Tex. 467 (1885). This court said that a damage

meant "every loss or diminution of what is a man's own, occasioned by the fault of another . . . ." The court also wrote:

It is also not improbable that it was intended, by the language found in the present constitution, to meet and correct evils which had sometimes been thought to result to the property owner from a narrow and technical meaning sometimes put by courts upon the word "taken" used in the former constitutions of this state and in the constitutions of the most of the other states.

\* \* \* \* \* \*

If by the construction of a railway or other public work an injury peculiar to a given property be inflicted upon it, or its owner be deprived of its legal and proper use, or of any right therein or thereto; that is, if an injury, not suffered by the particular property or right only in common with other property or rights in the same community or section, by reason of the general fact that the public work exists, be inflicted, then such property may be said to be damaged.

It is not every damaging, however, that should be compensated. The Constitution limits compensation to damages "for or applied to public use," and judicial restraints have narrowed that phrase to damages which arise out of or as an incident to some kind of public works. *City of Amarillo v. Stockton*, 158 Tex. 275, 310 S.W.2d 737 (1958); *Dallas County Flood Control Dist. v. Benson*, 157 Tex. 617, 306 S.W.2d 350 (1957); *Texas Highway Dept. v. Weber*, 147 Tex. 628, 219 S.W.2d 70 (1949); *State v. Hale*, 136 Tex. 29, 146 S.W.2d 731 (1941); *Sinclair Pipe Line Co. v. Lipscomb*, 308 S.W.2d 584 (Tex.Civ.App.—Fort Worth 1957, writ ref'd n. r. e.); *Bexar Metropolitan Water Dist. v. Kuntscher*, 274 S.W.2d 121 (Tex.Civ.App.—San Antonio 1954, no writ); *Gotcher v. State*, 106 S.W.2d 1104 (Tex.Civ.App.—Austin 1937, no writ). A more significant restraint, however, was the rule that the damaging must not result from negligence. *Texas Highway Dept. v. Weber, supra; Dallas Flood Control Dist. v. Benson, supra; State v. Hale, supra.*

*State v. Hale* states that liability for damaging for public use is not based upon negligence and then states: "The true test is, did the State intentionally perform certain acts in the exercise of the lawful authority to construct such highway for public use which resulted in the taking or damaging . . . ." However, other parts of the decision in *State v. Hale, supra* at 736, seemingly would impose liability upon the government for damages for public use if the damage was produced negligently, intentionally, or even accidentally:

The language used in Section 17 of Article I of the constitution which says that no person's property shall be taken or damaged for public use without adequate compensation being made, has no exceptions or limitations attached thereto. It is a clear, definite statement of the rule which prevails in this State, which controls all the departments of the state government, and the liability for adequate compensation for private property taken or damaged for public use is not based upon the ground that the act of taking or damaging such property was done negligently or intentionally.

■ Between the restrictions upon liability that denied compensation for negligent and other tortious acts by the government and the very broad liability suggested by the above quotation from *State v. Hale* lies a middle ground that this court has followed in permitting compensation for damages upon proof of a nuisance. *City of Abilene v. Downs*, 367 S.W.2d 153 (Tex. 1963); *Sherman Gas & Electric Co. v. Belden*, 103 Tex. 59, 123 S.W. 119 (1909). We hold in this case, however, that the plaintiffs alleged an action for the destruction of their property.

The government's intentional destruction of property is a subject that this court has infrequently addressed. *Keller v. Corpus Christi*, 50 Tex. 614 (1879), was an example of a citizen's action against a municipality for the intentional destruction of a dwelling to prevent the spread of a fire. The house, we learn from the opinion, was adjacent to another one that was already on fire and was already subjected to destruction. The court denied Keller's action, but it did so because he did not proceed as a remedial statute required.

*Keller* dealt with a remedial statute which permitted the destruction of a dwelling to prevent a public calamity. The statute permitted the destruction, but with compensation, when the dwelling was "likely to take fire and communicate to other buildings." A person of some authority and responsibility, however, had to give the order for destruction. The decision to destroy had to be made by the fire chief or the chief engineer with the concurrence of the mayor. *Keller v. Corpus Christi, supra* at 626. The statute also accorded Keller the right to assert his claim for damages before three commissioners, one chosen by the City, one by Keller, and the third by the other two. The commissioners were then authorized to conduct a hearing with the power to subpoena and swear witnesses and "to take into account the probabilities whether the building would have been destroyed by fire if it had not been so pulled down or destroyed." The court in *Keller* denied recovery because the plaintiff failed to follow the requirements of an enabling remedial law. We have no similar enabling statute in this case.

■ It is our opinion that plaintiffs' pleadings and their claim in contesting the motion for summary judgment established a lawful cause of action under Section 17, Article I, of the Texas Constitution. That claim was made under the authority of the Constitution and was not grounded upon proof of either a tort or a nuisance. It was a claim for the destruction of property, and governmental immunity does not shield the City of Houston. The Constitution itself is the authorization for compensation for the destruction of property and is a waiver of governmental immunity for the taking, damaging or destruction of property for public use.

■ We accordingly reverse the judgments of the courts below. Plaintiffs, upon remand, will be entitled to make proof that the City of Houston, acting through its

officers with authority or color of authority, intentionally set the house on fire or that the City prevented the fire's extinguishment after it was set. They must also prove that the destruction was done "for or applied to public use." *See Davis v. City of Lubbock*, 160 Tex. 38, 326 S.W.2d 699, 702–709 (1959). That is the factor which distinguishes a negligence action from one under the constitution for destruction. That the destruction was done for the public use is or can be established by proof that the City ordered the destruction of the property because of real or supposed public emergency to apprehend armed and dangerous men who had taken refuge in the house.

■ The defendant City of Houston may defend its actions by proof of a great public necessity. Mere convenience will not suffice. Uncompensated destruction of property has been occasionally justified by reason of war, riot, pestilence or other great public calamity. Destruction has been permitted in instances in which the building is adjacent to a burning building or in the line of fire and destined to destruction anyway.[2] Professor Prosser has said concerning the defense:

> Where the danger affects the entire community, or so many people that the public interest is involved, that interest serves as a complete justification to the defendant who acts to avert the peril to all. Thus one who dynamites a house to stop the spread of a conflagration that threatens a town, or shoots a mad dog in the street, or burns clothing infected with smallpox germs, or, in time of war, destroys property which should not be allowed to fall into the hands of the enemy, is not liable to the owner, so long as the emergency is great enough, and he has acted reasonably under the circumstances. The "champion of the public" is not required to pay out of his own pocket for the general salvation. The number of persons who must be endangered in order to create a public necessity has not been determined by the courts. It would seem that the moral obligation upon the group affected to make compensation in such a case should be recognized by the law, but recovery usually has been denied.

Prosser, The Law of Torts § 24 (4th ed. 1971). The scant proof made by the City of Houston in this case does not establish as a matter of law that it is excused from making compensation for the destruction of plaintiffs' dwelling and personal property.

2. Nichols states as follows in his treatise on the law of eminent domain:

More closely allied to the power of eminent domain is the power of destruction from necessity. In the case of fire, flood, pestilence or other great public calamity, when immediate action is necessary to save human life or to avert an overwhelming destruction of property, any individual may lawfully enter another's land and destroy his property, real or personal, providing he acts with reasonable judgment. Similarly he may, in self-defense, take the life of another under certain circumstances. The right to destroy life or property for self-preservation differs from eminent domain in that it is an individual right rather than an attribute of sovereignty. When it is exercised by a public officer he must justify his conduct as an individual whose position makes him a natural leader, rather than as an agent of the government. The right is a natural one and requires no statutory sanction; in fact it is doubtful if the exercise of the right could be constitutionally prohibited, whereas eminent domain requires specific authority for the legislature to war-

rant its exercise even by municipal corporations or officers of the state.

If the individual who enters and destroys private property happens to be a public officer whose duty it is to avert an impending calamity, the rights of the owner of the property to compensation are no greater than in the case of a private individual. The most familiar example of the exercise of this right is seen in case of a fire. The neighbors and fireman freely trespass on the adjoining land, and houses are even blown up to prevent the spread of the conflagration. The danger of flood or the existence of a pestilence may call for equally drastic action. However, the permanent appropriation of private property without the payment of compensation therefor cannot be justified under the power. Statutes sometimes provide for compensation in such cases, but unless the provisions of the statute are strictly complied with, the owner stands no better than he did at common law.

Nichols, The Law of Eminent Domain § 1.43 (rev. 3d ed. 1979); *see also* Restatement (Second) of Torts § 196 (1965).

The City argues that the destruction of the property as a means to apprehend escapees is a classic instance of police power exercised for the safety of the public. We do not hold that the police officers wrongfully ordered the destruction of the dwelling; we hold that the innocent third parties are entitled by the Constitution to compensation for their property.

The judgments of the courts below are reversed and the cause is remanded for trial.

GARWOOD, J., not sitting.