TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00484-CV






Texas Workforce Commission, Appellant



v.



MidFirst Bank, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 96-08757-A, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING






 Appellee MidFirst Bank ("MidFirst") sued in district court to enforce an Oklahoma
federal-court judgment in its favor against Reliance Healthcare of Texas, Inc. ("Reliance-Texas") 
and Reliance Healthcare of Houston, Inc. ("Reliance-Houston") (together "Reliance").(1) MidFirst
also sought to enforce its perfected security interests in the receivables of Reliance originally held
by the Comptroller of Public Accounts (the "Comptroller") under the administration of the Texas
Department of Human Services ("TDHS"). Appellant Texas Workforce Commission ("TWC")
obtained a significant portion of the receivables and applied the funds to partially satisfy statutory
liens that it held against Reliance due to Reliance's failure to pay former employees' wage claims
and unemployment taxes. Both MidFirst and TWC sought summary judgment. The district court
denied TWC's motion and granted summary judgment in MidFirst's favor for the Reliance
receivables held by TWC but subject to MidFirst's lien. TWC appeals. We will affirm.

FACTUAL BACKGROUND

MidFirst's Claims Against Reliance

 Reliance operated nursing homes in Texas. In October 1995 MidFirst, an
Oklahoma bank, loaned $750,000 to Reliance. In exchange, Reliance executed and delivered a
promissory note and security agreement to MidFirst. Under the security agreement, MidFirst
acquired a security interest in, inter alia, all of Reliance's receivables. On October 19, 1995,
MidFirst perfected its security interest by filing a financing statement with the Texas Secretary of
State. See Tex. Bus. & Com. Code Ann. § 9.501(a)(2) (West Supp. 2001). MidFirst also filed
financing statements in the county records of a number of Texas counties where MidFirst believed
Reliance was conducting business. 

 Reliance defaulted under the terms of the promissory note and the security
agreement. MidFirst brought suit against Reliance in federal court in Oklahoma and obtained a
judgment for the amount of the note plus interest. The federal court also ordered foreclosure of
MidFirst's security interest. In July 1996 MidFirst filed its Oklahoma federal-court judgment with
the district clerk of Travis County,(2) initiating this litigation.


TWC's Claims Against Reliance

 As of February 1, 1996, Reliance was delinquent in the payment of unemployment
taxes that it owed the State for the third and fourth quarters of 1995. TWC served notices of
assessment on Reliance for these tax delinquencies. See Tex. Lab. Code Ann. § 213.031 (West
1996). When Reliance failed to contest the assessments, they became entitled to the same force
and effect as a final judgment of a district court. See id. § 213.032(e). On June 24, 1996, TWC
issued an abstract of assessment stating that Reliance-Texas owed TWC $43,212.78 for
unemployment taxes and associated interest and penalties. See id. § 213.036 (West Supp. 2001). 
There is no indication on the June abstract that it was ever filed.(3) On July 3, 1996, TWC issued
an abstract of assessment stating that Reliance-Houston owed TWC $15,957.12 for unemployment
taxes and associated interest and penalties. See id. The July abstract reflects that it was filed in
Harris County on July 10, 1996. 

 TDHS administers funds received from the federal government to be paid to
healthcare providers, such as Reliance. See Tex. Hum. Res. Code Ann. §§ 32.001-.040 (West 
2001). Actual payment is made by the Comptroller through a system of vouchers and warrants. 
See id. § 32.029. Pursuant to the government code, warrants may be placed "on hold" when the
recipient of a warrant owes a debt to the State. See Tex. Gov't Code Ann. § 403.055(a) (West
Supp. 2001). Once TWC issued the abstracts of assessments, such holds were placed on the
warrants due Reliance. TWC obtained a power of attorney from Reliance and directed TDHS to
release to TWC various Medicaid reimbursements warrants intended for Reliance, totaling
$50,678.22 in partial satisfaction of the delinquent unemployment taxes.

 During January 1996 Reliance was also the subject of several back-wage claims
filed by its former employees. See Tex. Lab. Code Ann. §§ 61.001-.095 (West 1996 & Supp.
2001). After investigating these claims, TWC served preliminary wage-determination orders on
Reliance for failure to pay wages. See id. § 61.052 (West 1996). Because Reliance did not
contest these orders, they also became final. See id. § 61.055. TWC claims in its motion for
summary judgment that the wage orders became final "sometime in late-January of 1996." TWC
issued notices to persons thought to have assets of Reliance. See id. § 61.091. In July 1996 TWC
served on TDHS a notice of levy stating that Reliance owed $179,555.19 under chapter 61 of the
Texas Labor Code. See id. § 61.093. Pursuant to this notice, TDHS and the Comptroller
transferred to TWC $179,555.19 of the Medicaid warrants due Reliance to satisfy the wage
claims. In sum, TWC recovered $230,233.41 of Reliance's Medicaid warrants, which it applied
toward Reliance's debt for both the unemployment taxes and wage claims.


MidFirst's Suit Against TWC

 In July 1996 MidFirst initiated this action.(4) MidFirst sought to have the district
court declare TWC's liens invalid as against MidFirst's lien and to have the court declare that
MidFirst has a superior right to other receivables still held by TDHS and the Comptroller. 
MidFirst sought damages for the taking of the receivables under article I, section 17 of the Texas
Constitution (the "takings clause"). See Tex. Const. art. I, § 17. MidFirst also sought injunctive
relief to prevent further transfers of Reliance funds and, in the alternative, a turnover order. See
Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (West Supp. 2001).(5) TWC filed a plea to the
jurisdiction, an affirmative defense of sovereign immunity, a general denial, and special
exceptions. Both parties filed motions for summary judgment. In its motion, MidFirst asked the
court to declare MidFirst's lien superior to those of TWC and that as between MidFirst and TWC,
TWC's liens be invalidated and nullified; MidFirst asked the court to award it $230,233.41,
representing the Reliance funds received by TWC by virtue of TWC's liens. Alternatively,
MidFirst asked the court to declare that TWC took $230,233.41 in violation of the takings clause. 
TWC filed a competing motion for summary judgment and a motion to dismiss for lack of subject-
matter jurisdiction.

 The district court granted MidFirst's motion for summary judgment. The court
declared that TWC's liens were nullified until such time as MidFirst's superior lien is fully
satisfied. The court also ruled that TWC had violated the takings clause and rendered judgment
in favor of MidFirst in the amount of the receivables that had been taken by TWC--the
$230,233.41. The court denied TWC's motion for summary judgment and its motion to dismiss. 
TWC appeals.

DISCUSSION

 When both sides move for summary judgment and the trial court grants one motion
and denies the other, we review the summary-judgment evidence presented by both sides and
determine all questions presented. Commissioners Court v. Agan, 940 S.W.2d 77, 81 (Tex.
1997). If we find error, we must render the judgment the trial court should have rendered. See
id.

 In this Court, TWC assigns three "points of error":


1. The trial court erred as a matter of law in granting MidFirst Bank's Motion for
Summary Judgment and in failing to grant [TWC's] Motion for Summary
Judgment.


2. The trial court erred because [TWC] was immune from suit and was immune
from damages under the doctrine of sovereign immunity from MidFirst's causes
of action under the Texas Constitution, the Texas Tax Code and the Texas
Turnover Statute.


3. The trial court erred because . . . [the Declaratory Judgments Act] does not
provide for an independent cause of action against [TWC].



TWC's first point is a Malooly Bros. point and is sufficient to allow argument as to all the possible
grounds upon which TWC's motion should have been granted and MidFirst's denied. See Malooly
Bros., Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970). The substance of TWC's argument is
found in its second and third points, which attack MidFirst's ability to bring its suit.

 In her judgment, the district court nullified TWC's liens until MidFirst's superior
lien is fully satisfied. The court also declared that until MidFirst's lien is fully satisfied, TWC is
not entitled to any of Reliance's receivables and further ordered that TWC pay to MidFirst
$230,233.41, the amount TWC took in violation of the takings clause. The issues in this appeal,
then, are whether the district court had jurisdiction to (1) nullify TWC's liens as to MidFirst, (2)
declare that MidFirst's lien is superior and that TWC is not entitled to any of Reliance's
receivables until such time as MidFirst's lien is fully satisfied, and (3) award damages based on
the takings clause.


Nullification

 The tax code provides that in an action to determine the validity of a state tax lien,
the lien may either be perpetuated and foreclosed or nullified. See Tex. Tax Code Ann.
§ 113.106(a) (West 1992). These are the only remedies provided. TWC concedes that "if a court
determines a state tax lien to be 'unlawful or invalid,' all it can do is nullify it." TWC further
admits, "All the court was empowered to do under section 113.106 was to address the validity of
a state tax lien." We do not read TWC's brief to challenge the power of the court to nullify a state
tax lien under section 113.106.


Declarations

 TWC argues that the Uniform Declaratory Judgments Act (the "Declaratory
Judgments Act")(6) does not provide for an independent cause of action against TWC. According
to TWC, without jurisdiction arising from a separate statute, a cause of action under the
Declaratory Judgments Act will not lie against the State because of sovereign immunity.

 Generally, sovereign immunity, unless waived, protects the State, its agencies, and
its officials from lawsuits for damages, absent legislative consent to sue the State. Federal Sign
v. Texas S. Univ., 951 S.W.2d 401, 405 (Tex. 1997). However, a "party can maintain a suit to
determine its rights without legislative permission." Id. at 404 (citing Cobb v. Harrington, 190
S.W.2d 709, 712 (Tex. 1945)); see Texas Highway Comm'n v. Texas Ass'n of Steel Importers,
Inc., 372 S.W.2d 525, 530 (Tex. 1963) (legislative consent not required for declaratory-judgment
action against state to determine parties' rights). Here, MidFirst sought a declaratory judgment
to determine its rights as against TWC under its lien. MidFirst may bring this suit without
legislative permission. See Federal Sign, 951 S.W.2d at 405. The cases TWC relies on are
unpersuasive. See, e.g., State v. Morales, 869 S.W.2d 941, 942 (Tex. 1994) (explaining when
civil litigant may bring suit to declare criminal statute unconstitutional); Southwestern Bell Tel.
Co. v. Public Util. Comm'n, 735 S.W.2d 663, 666 (Tex. App.--Austin 1987, no writ) (in context
of administrative proceedings, court's jurisdiction under Declaratory Judgments Act derives from
its inherent power to hear and determine whether agency action was ultra vires or
unconstitutional). We hold that sovereign immunity does not bar MidFirst's claim for declaratory
relief.


Takings

 Article I, section 17 of the Texas Constitution forbids the State from taking,
damaging, or destroying a person's property for public use without payment of adequate
compensation. Tex. Const. art. I, § 17. Violation of this section is established upon proof that
(1) the State intentionally performed certain acts,(7) (2) that resulted in a taking of property, (3) for
public use. Green Int'l, Inc. v. State, 877 S.W.2d 428, 434 (Tex. App.--Austin 1994, writ
dism'd).

 TWC argues that the district court erroneously applied the takings clause to the facts
of this case. In an argument specific to the unemployment taxes, TWC asserts that the takings
clause does not apply to the Unemployment Compensation Act.(8) Additionally, TWC's actions in
recovering the wage claims did not amount to a taking because its actions were not for a public
purpose. TWC also generally argues that the concept of a "taking" under the Texas Constitution
is confined to eminent domain. Finally, TWC claims that the district court erred in awarding
damages under the takings clause.

 Relying on Friedman v. American Surety Co., 151 S.W.2d 570, 575 (Tex. 1941),
TWC argues that the takings clause does not apply to its actions in collecting a tax. In Friedman, 
a surety company refused to reimburse Friedman for unemployment taxes he paid on behalf of a
contractor. Id. at 574-75. The surety company challenged the constitutional validity of the
statutes authorizing the tax on various constitutional grounds, including the takings clause. See
id. at 575. The court held that the State has the power to tax and the takings clause does not
infringe on that power. See id. at 577. Thus, TWC is correct that the takings clause does not
affect the validity of the unemployment tax, the state's authority to impose the tax, or the State's
ability to collect the tax from the taxpayer. But that is not MidFirst's challenge; instead, MidFirst
complains of TWC's actions in taking specific property in which MidFirst holds a superior
interest. Friedman and the rule of law it states do not prevent MidFirst's claim. 

 TWC next argues that its actions in recovering the funds for wage claims were not
in furtherance of a public purpose. See Green Int'l, 877 S.W.2d at 434 (for property owner to
recover under takings clause, property must be taken for public purpose). TWC points out that
the money it recovered for wage claims is available only to the claimants themselves, not the
general public. See Tex. Lab. Code Ann. §§ 61.063(c), .064 (West 1996) (TWC must pay to
claimant any wages collected and any interest earned).

 However it is the action of TWC in depriving MidFirst of its right to property that
constitutes the taking. Although the money taken may ultimately be paid to citizen claimants,
TWC acted in fulfillment of a public purpose. The fact that the benefit inures to a specific group
of people does not lessen the importance of enforcement of the labor code to the public at large. 
See Housing Auth. v. Higginbotham, 143 S.W.2d 79, 84 (Tex. 1940). We hold that in serving
the notice of levy on TDHS and obtaining funds that were rightfully the property of MidFirst,
TWC was acting in furtherance of a public purpose.

 TWC also argues that the concept of a "taking" under the Texas Constitution is
limited to eminent domain and should not be extended to a tax context. TWC cites no authority
for the proposition that a constitutional taking is limited to a governmental authority annexing
land. In fact, both TWC and MidFirst recognize that County of Burleson v. General Electric
Capital Corp., 831 S.W.2d 54 (Tex. App.--Houston [14th Dist.] 1992, writ denied), allowed a
takings-clause action when a taxing authority illegally sold a mobile home in which a company had
a security interest. See 831 S.W.2d at 57. In General Electric Capital Corp., a local taxing
authority foreclosed on a debtor's mobile home in order to collect a deficient tax. In doing so, the
taxing authority acted contrary to the required procedures for the foreclosure of its statutory lien
by failing to provide notice to the holder of a prior perfected security interest. The court rejected
the taxing authority's claim that this was not a taking under the Texas Constitution and held that
the taxing authority's "actions have damaged [the company] and deprived it of a valuable property
interest without due process or compensation." Id. at 59. The court concluded that the company
established a lawful cause of action under the takings clause. See id. at 60. We are not persuaded
by TWC's attempt to distinguish General Electric Capital Corp., and we will not limit takings-clause actions to situations involving eminent domain.

 Finally, TWC argues that the district court erred in awarding damages to MidFirst
because the State is immune from liability for damages. See Federal Sign, 951 S.W.2d at 405. 
TWC asserts that there "is no implied right of action for damages for violation of state
constitutional rights in general." While TWC may be correct,(9) the issue in this case is not a
violation of "general constitutional rights" but a violation of the takings clause. Article I, section
17 is itself a waiver of sovereign immunity from both suit and liability. Steele v. City of Houston,
603 S.W.2d 786, 791 (Tex. 1980). The State has waived immunity for liability in a takings-clause
action. See id.

 TWC also argues under its last point that MidFirst's interest in its collateral is not
equivalent to a landowner's right to compensation because MidFirst "could never have executed
on its alleged collateral because the Texas Government Code(10) prohibited the Comptroller from
issuing any State warrants to Reliance because of pre-existing tax liabilities." (Footnote added.) 
"The government's duty to compensate for damaging property for public use . . . [is] not
dependent upon transfer of property rights." Id. at 790; accord General Elec. Capital Corp., 831
S.W.2d at 60. Relying on Gulf, Colorado & Santa Fe Railway Co. v. Eddins, 60 Tex. 656
(1884), and Gulf, Colorado & Santa Fe Railway Co. v. Fuller, 63 Tex. 467 (1885), the supreme
court explained in Steele that the takings clause is broad and that it is sufficient to entitle a person
to compensation if that person's property has been damaged, damage meaning every loss or
diminution of what is a person's own. The court went on to say that an owner cannot be deprived
of her property's legal and proper use or of "'any right therein or thereto.'" Steele, 603 S.W.2d
at 790 (quoting Fuller, 63 Tex. at 470). TWC does not dispute that the warrants belonged to
Reliance in the sense that if there were no tax liens, the Comptroller would issue these warrants
to Reliance. Also, TWC does not dispute that MidFirst perfected its lien before TWC's liens even
arose. The money in question is, in essence, MidFirst's property. Just because the State, by way
of the Comptroller, is in possession of that property does not defeat MidFirst's cause of action. 
The district court did not err when it assumed jurisdiction pursuant to the takings clause over this
particular fact situation. Cf. General Elec. Capital Corp., 831 S.W.2d at 59-60.


CONCLUSION

 We overrule all of TWC's points of error and affirm the district court's judgment.



 

 Lee Yeakel, Justice

Before Justices Yeakel, Patterson and Jones*

Affirmed

Filed: February 28, 2001

Publish



















* Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).

1. See Tex. Civ. Prac. & Rem. Code Ann. §§ 35.001-.008 (West 1997).
2. See Tex. Civ. Prac. & Rem. Code Ann. § 35.003 (West 1997) (authenticated foreign
judgment may be filed with clerk of Texas court and be entitled to same effect as judgment of that
court).
3. TWC's collection manager testified by affidavit that this abstract of assessment was filed
with a county clerk in Texas but did not specify the county.
4. The record before us contains only MidFirst's fourth amended original petition styled
"MidFirst Bank v. Reliance Healthcare of Texas Inc., Reliance Healthcare of Houston, Inc.,
Richard B. White, Robert S. O'Daniel and Terry J. Wilson." However, the body of that pleading
names Reliance-Texas, Reliance-Houston, TDHS, the Comptroller, and TWC as the defendants. 
The district clerk's docket sheet reflects that at one time or another Texas Health Enterprises, Inc.
and other individuals were parties to the proceeding. On the same day that she signed the final
judgment in favor of MidFirst and against TWC, the district court severed the "remaining claims,
causes of action and other matters" in the case from those disposed of by the final judgment. In
this appeal, we thus consider only the issues addressed in the final judgment to which only
MidFirst and Reliance are parties.
5. Although this statute has been amended since MidFirst filed suit, we cite the current version
because the change does not affect our determination of this case.
6. Tex. Civ. Prac. & Rem. Code Ann. § 37.001-.011 (West 1997 & Supp. 2001).
7. The Texas Supreme Court's recent decision in General Services Commission v. Little-Tex
Insulation Co., 44 Tex. Sup. Ct. J. 397, 402 (Tex. 2000), established that the State does not have
the requisite intent when money or property is taken or withheld in the context of a contract
dispute. Little-Tex does not alter our analysis of the takings-clause violation because here there
was no contractual relationship between MidFirst and TWC.
8. Tex. Lab. Code Ann. §§ 201.001-.101 (West 1996 & Supp. 2001).
9. See City of Beaumont v. Bouillion, 896 S.W.2d 143, 149 (Tex. 1995).
10. Tex. Gov't Code Ann. § 403.055(a) (West Supp. 2001).


 and Gulf, Colorado & Santa Fe Railway Co. v. Fuller, 63 Tex. 467 (1885), the supreme
court explained in Steele that the takings clause is broad and that it is sufficient to entitle a person
to compensation if that person's property has been damaged, damage meaning every loss or
diminution of what is a person's own. The court went on to say that an owner cannot be deprived
of her property's legal and proper use or of "'any right therein or thereto.'" Steele, 603 S.W.2d
at 790 (quoting Fuller, 63 Tex. at 470). TWC does not dispute that the warrants belonged to
Reliance in the sense that if there were no tax liens, the Comptroller would issue these warrants
to Reliance. Also, TWC does not dispute that MidFirst perfected its lien before TWC's liens even
arose. The money in question is, in essence, MidFirst's property. Just because the State, by way
of the Comptroller, is in possession of that property does not defeat MidFirst's cause of action. 
The district court did not err when it assumed jurisdiction pursuant to the takings clause over this
particular fact situation. Cf. General Elec. Capital Corp., 831 S.W.2d at 59-60.


CONCLUSION

 We overrule all of TWC's points of error and affirm the district court's judgment.



 

 Lee Yeakel, Justice

Before Justices Yeakel, Patterson and Jones*

Affirmed

Filed: February 28, 2001

Publish



















* Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).

1. See Tex. Civ. Prac. & Rem. Code Ann. §§ 35.001-.008 (West 1997).
2. See Tex. Civ. Prac. & Rem. Code Ann. § 35.003 (West 1997) (authenticated foreign
judgment may be filed with clerk of Texas court and be entitled to same effect as judgment of that
court).
3. TWC's collection manager testified by affidavit that this abstract of assessment was filed
with a county clerk in Texas but did not specify the county.
4. The record before us contains only MidFirst's fourth amended original petition styled
"MidFirst Bank v. Reliance Healthcare of Texas Inc., Reliance Healthcare of Houston, Inc.,
Richard B. White, Robert S. O'Daniel and Terry J. Wilson." However, the body of that pleading
names Reliance-Texas, Reliance-Houston, TDHS, the Comptroller, and TWC as the defendants. 
The district clerk's docket sheet reflects that at one time or another Texas Health Enterprises, Inc.
and other individuals were parties to the proceeding. On the same day that she signed the final
judgment in favor of MidFirst and against TWC, the district court severed the "remaining claims,
causes of action and other matters" in the case from those disposed of by the final judgment. In
this appeal, we thus consider only the issues addressed in the final judgment to which only
MidFirst and Reliance are parties.
5. Although this statute has been amended since MidFirst filed suit, we cite the current version
because the change does not affect our determination of this case.
6. Tex. Civ. Prac. & Rem. Code Ann. § 37.001-.011 (West 1997 & Supp. 2001).
7. The Texas Supreme Court's recent decision in General Services Commission v. Little-Tex
Insulation Co., 44 Tex. Sup. Ct. J. 397, 402 (Tex. 2000), established that the State does not have
the requisite intent when money or property is taken or withheld in the context of a contract
dispute. Little-Tex does not alter our analysis of the takings-clause violation because here there
was no contractual relationship between MidFirst and TWC.
8. Tex. Lab. Code Ann. §§ 201.001-.101 (West 1996 & Supp. 2001).
9. See City of Beaumont v. Bouillion, 896 S.W.2d 143, 149 (Tex. 1995).
10. Tex. Gov't Code Ann. § 403.055(a) (West Supp. 2001).


 and Gulf, Colorado & Santa Fe Railway Co. v. Fuller, 63 Tex. 467 (1885), the supreme
court explained in Steele that the takings clause is broad and that it is sufficient to entitle a person
to compensation if that person's property has been damaged, damage meaning every loss or
diminution of what is a person's own. The court went on to say that an owner cannot be deprived
of her property's legal and proper use or of "'any right therein or thereto.'" Steele, 603 S.W.2d
at 790 (quoting Fuller, 63 Tex. at 470). TWC does not dispute that the warrants belonged to
Reliance in the sense that if there were no tax liens, the Comptroller would issue these warrants
to Reliance. Also, TWC does not dispute that MidFirst perfected its lien before TWC's liens even
arose. The money in question is, in essence, MidFirst's property. Just because the State, by way
of the Comptroller, is in possession of that property does not defeat MidFirst's cause of action. 
The district court did not err when it assumed jurisdiction pursuant to the takings clause over this
particular fact situation. Cf. General Elec. Capital Corp., 831 S.W.2d at 59-60.


CONCLUSION

 We overrule all of TWC's points of error and affirm the district court's judgment.



 

 Lee Yeakel, Justice

Before Justices Yeakel, Patterson and Jones*

Affirmed

Filed: February 28, 2001

Publish



















* Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).

1. See Tex. Civ. Prac. & Rem. Code Ann. §§ 35.001-.008 (West 1997).
2. See Tex. Civ. Prac. & Rem. Code Ann. § 35.003 (West 1997) (authenticated foreign
judgment may be filed with clerk of Texas court and be entitled to same effect as judgment of that
court).
3. TWC's collection manager testified by affidavit that this abstract of assessment was filed
with a county clerk in Texas but did not specify the county.
4. The record before us contains only MidFirst's fourth amended original petition styled
"MidFirst Bank v. Reliance Healthcare of Texas Inc., Reliance Healthcare of Houston, Inc.,
Richard B. White, Robert S. O'Daniel and Terry J. Wilson." However, the body of that pleading
names Reliance-Texas, Reliance-Houston, TDHS, the Comptroller, and TWC as the defendants. 
The district clerk's docket sheet reflects that at one time or another Texas Health Enterprises, Inc.
and other individuals were parties to the proceeding. On the same day that she signed the final
judgment in favor of MidFirst and against TWC, the district court severed the "remaining claims,
causes of action and other matters" in the case from those disposed of by the final judgment. In
this appeal, we thus consider only the issues addressed in the final judgment to which only
MidFirst and Reliance are parties.
5. Although this statute has been amended since MidFirst filed suit, we cite the current version
because the change does not affect our determination of this case.
6. Tex. Civ. Prac. & Rem. Code Ann. § 37.001-.011 (West 1997 & Supp. 2001).
7. The Texas Supreme Court's recent decision in General Services Commission v. Little-Tex
Insulation Co., 44 Tex. Sup. Ct. J. 397, 402 (Tex. 2000), established that the State does not have
the requisite intent when money or property is taken or withheld in the context of a contract
dispute. Little-Tex does not alter our analysis of the takings-clause violation because here there
was no contrac