Affirmed and Memorandum Opinion filed August 1, 2006








Affirmed and Memorandum Opinion filed August 1, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. No. 14-05-00027-CV

____________

 

DELORES AHART, ET AL, Appellants

 

V.

 

TEXAS DEPARTMENT OF TRANSPORTATION, Appellee

 



 

On Appeal from the County
Civil Court at Law No. 3

Harris County, Texas

Trial Court Cause No. 794,877

 



 

M E M O R A N D U M   O P I N I O N

Appellants appeal the trial court=s granting of the
Texas Department of Transportation=s (ATxDOT@) plea to the
jurisdiction on their taking and damaging claims under the Texas Constitution
for the flooding of their homes, which allegedly was the result of blockage due
to a TxDOT project.  We affirm. 








                                                  Background

Appellants[1] are past or present
homeowners representing over 40 homes in the Kirkwood Subdivision located on a
former rice field in Southeast Harris County, just inside the Houston city
limits, west of Beamer Street and near Beltway 8.  Appellants allege storm
waters from Tropical Storm Allison in June 2001, accumulated in their
subdivision at the south end of Newton Street (the lowest point in the
subdivision) as they had in past storms.  However, appellants claim, on this
occasion, the storm waters from Tropical Storm Allison could not escape fast
enough from the subdivision into nearby Beamer Ditch (also known as A120)
because they were blocked by TxDOT=s Beltway 8
project.  Appellants claim that prior to the completion of Beltway 8, accumulated
storm waters would eventually flow south out of the subdivision along Newton
Street and into a lateral ditch that feeds into Beamer Ditch.  Appellants
allege the natural consequence of this blockage was the backing up of storm
waters inside the subdivision at the south end of Newton Street, resulting in
the flooding of their homes.  








Appellants sued TxDOT alleging Ataking@ and Adamaging@ claims under
Article I, Section 17 of the Texas Constitution.  Tex. Const. art. I, ' 17.  TxDOT,
contending that Article I, Section 17 is not applicable here, filed a plea to
the jurisdiction and a motion for summary judgment.  The trial court denied the
motion for summary judgment, but granted the plea to the jurisdiction,
dismissing appellant=s inverse condemnation claims.  In their
sole issue in this appeal, appellants contend the trial court erred in granting
TxDOT=s plea to the
jurisdiction.  

                                           Standard of Review

Subject matter jurisdiction is essential to the court=s power to decide
a case.  Texas Ass=n of Bus. v. Texas
Air Control Bd., 852 S.W.2d 440, 443 (Tex. 1993).  Whether a court has
subject matter jurisdiction is a matter of law.  Texas Dep=t of Parks &
Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004).  

A plea to the jurisdiction challenges the court=s subject matter
jurisdiction.  Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex.
2000).  When a plea to the jurisdiction challenges the pleadings, we determine
if the pleader alleged facts that affirmatively demonstrate the court=s jurisdiction to
hear the case.  Miranda, 133 S.W.3d at 226.  We construe the pleadings
in favor of the plaintiffs and look to the pleaders= intent.  Id. 
If the pleadings do not contain sufficient facts to affirmatively demonstrate
the trial court=s jurisdiction, but do not affirmatively
demonstrate incurable defects in jurisdiction, the issue is one of pleading
sufficiency and the plaintiffs should have the opportunity to amend.  Id.
at 226B27.  

On the other hand, if a plea to the jurisdiction challenges
the existence of jurisdictional facts, we consider relevant evidence submitted
by the parties when necessary to resolve the jurisdictional issues raised, as
the trial court is required to do.  Id. at 227.  Where the
jurisdictional challenge implicates the merits of the case and the plea to the jurisdiction
includes evidence, the trial court reviews the relevant evidence to determine
if there is a fact issue.  Id.  If the evidence creates a fact question
concerning the jurisdictional issue, then the trial court cannot grant the plea
to the jurisdiction and the fact issue will be resolved by the fact finder.  Id.
at 227B28.  If the
relevant evidence is undisputed or does not raise a fact issue on the
jurisdictional question, the trial court rules on the plea to the jurisdiction
as a matter of law.  Id. at 228.  








In reviewing a plea to the jurisdiction in which the
pleading requirement has been met and evidence has been submitted in support of
the plea that implicates the merits of the case, we take as true all evidence
favorable to the nonmovant.  Id.  Every reasonable inference and any
doubts are resolved in favor of the nonmovant.  Id.  

                                    Takings or Damaging Claims

Article I, Section
17 of the Texas Constitution provides:

No person=s property shall
be taken, damaged or destroyed for or applied to public use without adequate
compensation being made, unless by the consent of such person; . . .

Tex. Const. art. I, ' 17.  

The premise of Article I, Section 17 is the government
should not A>forc[e] some people alone to bear
public burdens which, in all fairness and justice, should be borne by the public
as a whole.=@  Steele v. City of Houston, 603
S.W.2d 786, 789 (Tex. 1980) (quoting Armstrong v. United States, 364
U.S. 40, 49 (1960)).  Condemnation is the process by which the government
exercises its right to take the property of a private owner for public use
without consent, but upon payment of just compensation.  City of Houston v.
Boyle, 148 S.W.3d 171, 178 (Tex. App.CHouston [1st
Dist.] 2004, no pet.).  Inverse condemnation is when the government takes
property without paying adequate compensation and the owner seeks to recover
the resulting damages.  Westgate, Ltd. v. State, 843 S.W.2d 448, 452
(Tex. 1992).  The elements of an inverse condemnation claim are (1) the State
intentionally performed certain acts in the exercise of its lawful authority,
(2) that resulted in the taking, damaging, or destroying of property, (3) for
public use.  General Servs. Comm=n v. Little-Tex
Insulation Co., 39 S.W.3d 591, 598 (Tex. 2001).  








Here, the crux of the dispute is over the intent element of
appellants= inverse condemnation action.  In their original
petition, appellants allege that although TxDOT knew the lateral ditch, which
fed into Beamer Ditch, provided a route for storm waters that might accumulate
in the subdivision, nonetheless, it intentionally (1) covered over the lateral
ditch with the westbound lanes of Beltway 8, (2) elevated those lanes in order
to cross over Beamer Ditch, (3) built a sound wall next to these lanes, and (4)
chose not to provide an alternate route for accumulating storm waters. 
Appellants claim the necessary consequence of these intentional acts was to
eliminate the path for accumulating storm waters to escape the subdivision.  

Appellants further allege TxDOT intentionally designed and
constructed the underground drainage system for Beltway 8 to handle the capacity
of a five-year storm event, the necessary consequence of which is for storm
waters from a storm greater than Aa five-year storm@ to accumulate on
the roadway and eventually overflow in the subdivision.  

Thus, appellants argue the Aintent@ element of an
inverse condemnation claim is Aintent to take or at least the intent to
do the act that caused the harm.@  However, in City
of Dallas v. Jennings, the Texas Supreme Court expressly rejected the
argument that only the act causing the harm must be intentional because such a
standard would hold the government entity A>to a higher
liability than a private person engaging in the same acts.=@  142 S.W.3d 310,
313 (Tex. 2004) (quoting Houston v. Renault, Inc., 431 S.W.2d 322, 325
(Tex. 1968)).  The court also pointed out that the standard proposed by
appellants would ignore the requirement Athat the damage be
>for or applied to
public use.=@  Id. (quoting Tex. Const. art. I, ' 17).  That is,
when damage is merely the accidental result of the act of a government entity,
there is no public benefit and, therefore, the property has not been taken or
damaged for public use.  Id.  On the other hand, the court also rejected
the argument that the government entity must necessarily intend to cause the
damage.  Id. at 314.  Instead, if the government entity knows specific
damage is substantially certain to result by its conduct, takings liability may
arise even if the government entity did not desire that the property be
damaged.  Id.  








After rejecting the arguments of both parties, the Jennings
court held that when a government entity physically damages private property in
order to confer a public benefit, the entity may be liable under Article I,
Section 17 if it (1) knows that a specific act is causing identifiable harm; or
(2) knows that the specific property damage is substantially certain to result
from an authorized government action.  Id.  

The supreme court has Asought objective
indicia of intent in particular contexts to determine whether property has been
taken or damaged in furtherance of public interest.@  Tarrant Reg=l Water Dist. v.
Gragg, 151 S.W.3d 546, 555 (Tex. 2004).  In the case of flood water impacts,
recurrence is a probative factor in determining the extent of the taking and
whether it is necessarily incident to authorized government activity and,
therefore, substantially certain to occur.  Id.  Although a nonrecurrent
flooding may cause damage, a single flood event generally does not rise to the
level of a taking.  Id.  This standard assures that the government will
not be held liable for the taking of property when a project=s adverse impacts,
and by implication its benefit to the public, are too temporal or speculative
to warrant compensation.  Id.  

Appellants have alleged both a taking claim and a damaging
claim.[2] 
The taking, damaging, and destruction of property are three distinct claims
arising under Article I, Section 17 even though the term Ataking@ has been used as
a shorthand reference to all three types of claims.  Jennings, 142
S.W.3d at 313 n.2; Steele, 603 S.W.2d at 789.  A plaintiff need not show
that his property shall be destroyed or taken to entitle him to compensation,
but, instead only that his property has been damaged.  Steele, 603
S.W.2d at 790; see also Boyle, 148 S.W.3d at 177 (AA landowner may
recover for damages to his property under article I, section 17 even when there
is no transfer of property rights.@).  AThe fact of being
damaged entitles [the plaintiff] to the protection extended by this
constitutional provision, as fully as if his property had been actually taken
or destroyed.@  Steele, 603 S.W.2d at 790.  However, not
every Adamaging@ is compensable.  Id. 









It appears that in light of Gragg, wherein the
supreme court stated that nonrecurrent flooding may cause damage, but not rise
to the level of a taking,[3]
appellants argue that even if, after a trial on the merits, the trial court
found their claims did not rise to the level of a taking, it should have found
their claims rise to the level of a damaging in this one-time flood event. 
Whether a Ataking@ or Adamaging@ claim has been
alleged, a plaintiff must still meet the standard for intent announced in Jennings,
i.e., that to impose liability, the government entity must (1) know that
a specific act is causing identifiable harm; or (2) know that the
specific property damage is substantially certain to result from an authorized
government action.  Jennings, 142 S.W.3d at 314.[4] 
Thus, even under a damaging claim based on a single flooding event, appellants
must still satisfy the requirement set forth in Jennings.  

Appellants assert they have presented evidence sufficient
to establish, at a minimum, a fact issue on TxDOT=s intent. 
Appellants point to the deposition testimony of Sam Talje, a TxDOT hydraulic
engineer.  Talje=s hydraulic section reviewed the drainage
analysis for Beltway 8, including the section near Beamer Road.  Talje
testified that TxDOT knew about the lateral ditch prior to the construction of
the Beltway 8 frontage road.  Talje stated that the sound wall extending across
Newton Street causes ponding and if the sound wall were not there, the flooding
would not have been as bad for the same amount of rain.  Talje testified the
storm sewers for Beltway 8 near Beamer Road are designed to handle a five-year
storm and TxDOT understands that if there is a storm greater than a five-year
storm, an overflow condition can occur.  Talje testified Tropical Storm Allison
was a 100-year storm.








Appellants also cite to the deposition testimony of their
expert, Hanadi Rifai, Ph.D.  Rifai testified the TxDOT storm sewer was designed
for a five-year storm and any storm above that would cause water to accumulate
in the street and the presence of the sound wall obstructed the natural
overland flow of the water, which, prior to the construction, would have
otherwise exited the area.  Rifai stated this resulted in the flooding of
appellants= homes.  

Neither the testimony of Talje nor the testimony of Rifai
addresses intent, but only causation.  Such testimony does not raise a fact
issue with regard to whether TxDOT knew flooding of appellants= home in the
Kirkwood Subdivision would result or that such flooding was substantially
certain to result from the design and construction of Beltway 8, including the
storm sewer and the sound wall, necessary to preclude dismissal of appellants= taking and
damaging claims.  Thus, the trial court did not err in granting TxDOT=s plea to the
jurisdiction.  Appellants= sole issue is overruled.  

Accordingly, the judgment of the trial court is affirmed.  

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered
and Opinion filed August 1, 2006.

Panel consists of
Justices Hudson, Fowler, and Seymore.









[1]  Appellants are Deloris Ahart, Roy L. Allen, Dorothy
Ann Allen, Laura v. Alvarado, Lincoln B. Armstrong, Ellen M. Armstrong, Cindy
Aubry, Robert Beckham, Linda Beckham, Rosemary J. Brynston, Bernard Cox, Linda
Daniel, Cindy R. Aubry, William G. Ellis, Gail L. Ellis, Candido Flores, Sara
Flores, Midge Gorman, Leslie A. Hamilton, Ann L. Hamilton, W.E. Hayman, Jr.,
Deborah Hayman, John F. Hey, Lynn E. Kays, William E. Houch, Suzanne Houck,
Elby Wade, Nancy Hudson, Michael Kent, Melody Kent, Donna L. Klassen, Douglas
E. Lowery, Hazel J. Lowery, Servaundo Mata, M.R. McCrary, Linda McCrary,
Richard McMurrough, Denise McMurrough, Norman L. Miller, Vernon L. Ogg, Theda
Ogg, Ly Pol, Pov C. Pol, Mary A. McLaughlin Richard, William E. Riordan, John
P. Rivers, William W. Sandlin, Shirley J. Sandlin, Robert W. Seago, Carol Y.
Seago, Lorenzo Sepulveda, Cynthia Sepulveda, Melvin Shaw, Joyce A. Shaw, Orlo
M. Shultz, Jennine Shultz, Ervin R. Starnes, R. Marie Starnes, Pedro Torres,
Ana D. Torres, Jesus C. Torres, Bertha M. Torres, Darrell Scott Williams, Linda
M. Williams, Earl B. Williams, Kathy Williams, Daniel J. Willingford, Kim
Willingford, Gary M. Willis, Peggy J. Willis, Roland O. Woolems, Shirley
Woolems, Pedro Yruegaz, and Jackie Yruegaz.  





[2]  Under their Ataking@ claim, appellants seek damages based on diminution in
market value or the difference in fair market value of the property immediately
before and immediately after the taking occurred.  Under their Adamaging@
claim, appellants seek damages based on the cost to repair and/or replace
damaged property.  





[3]  Gragg, 151 S.W.3d at 555.  





[4]  The property owners in Jennings asserted a
damages claim under article I, section 17.  Jennings, 142 S.W.3d at 313
n.2; see also Coyne v. Kaufman County, 144 S.W.3d 129, 133 (Tex. App.CEastland 2004, no pet.) (recognizing that the
claimants in Jennings asserted a Adamage@ claim under the taking clause).